THE STATE OF TEXAS V. R. B. CARPENTER ET AL.

No. 6460. Decided January 8, 1936.
Rehearing overruled February 19, 1936.
(89 S. W., 2d Series, 194, 979.)

*John B. McNamara* and *W. L. Eason, both* of Waco, for plaintiff in error.

Neither the value of the land not taken, nor the improvements situated thereon, should be considered in determining the market value of the land taken. The owners were entitled to recover only for the strip of land taken for road purposes. State v. Doom, 278 S. W., 255; Parker Co. v. Jackson, 23 S. W., 924; City of Mart v. Hasse, 281 S. W., 318; Central v. Willacy County, 14 S. W. (2d) 102.

Where case is submitted on special issues a general charge should not be given. El Paso v. Collins, 23 S. W. (2d) 295; Buro v. Home Benefit, 28 S. W. (2d) 902; Watson v. Watson, 28 S. W. (2d) 1100; Andrews v. Brown, 283 S. W., 288.

*Bryan & Maxwell, Stansell Bryan,* and *Sleeper, Boynton & Kendall,* all of Waco, for defendants in error.

The court properly instructed the jury that in determining the market value of the land actually taken by the State in this proceeding that said value "is not the market value of said land taken for right of way purposes when considered by itself alone, but is its market value as a part of the entire tract, of which it forms a part." Caruthers v. Johnson County, 94 S. W., 912; City of San Antonio v. Fike, 224 S. W., 911; Texas Pipe Line Co. v. Higgs, 243 S. W., 633; Illinois, I. & M. Ry. Co. v. Humiston, 69 N. E., 880.

The paragraph of the charge of the court excluding community benefits was not a general charge, but was a proper instruction with reference to the injuries and benefits to be considered by the jury. International & G. N. R. R. Co. v. Casey, 46 S. W. (2d) 669; Houston Lighting & Power Co. v. Daily, 291 S. W., 317; Speer on Special Issues, Section 114.

Mr. Judge GERMAN delivered the opinion of the Commission of Appeals, Section A.

This was a condemnation proceeding brought by the State of Texas, herein referred to as plaintiff, against R. B. Carpenter and others, herein referred to as defendants. The State sought to condemn 8.03 acres of land for highway purposes across a tract of 240 acres owned by Carpenter and wife. In the trial court a judgment was rendered in favor of defendants for $803.00 as the value of the 8.03 acres taken for right of way, and for $3,477.00 as depreciation in the value of the balance of the farm. This judgment was affirmed by the Court of Civil Appeals. 55 S. W. (2d) 219. The questions for determination here pertain to charges of the court in submitting questions as to compensation.

By Special Issue No. 1 the jury was asked to determine the reasonable market value of the 8.03 acres. They answered $803.00. In connection with this question the jury was instructed as follows:

"In connection with Special Issue No. 1, you are instructed that the market value of the 8-3/100 acres of land within the right of way, is not the market value of said land taken for right of way purposes when considered by itself alone, but is its market value as a part of the entire tract of which it forms a part."

The court inquired of the jury to ascertain whether or not the market value of the remainder of the farm had been reduced

by reason of the condemnation of the 8.03 acres taken. The jury answered "Yes." The court also submitted Special Issue No. 3 as follows:

"What amount, in dollars and cents, do you find, from a preponderance of the evidence, that the remainder of the R. B. Carpenter farm will be reduced in market value by the condemnation of the 8-3/100 acres of land, if any?"

To this question the jury answered $3,477.00, and judgment was rendered in favor of the defendant for the $803.00 and the $3,477.00.

■ The first question for decision concerns the action of the court in giving the instruction set out above in connection with Special Issue No. 1. Perhaps if the value of the strip of land taken had been the only issue submitted it would have been proper to submit the question of its value, considered as a part of the whole tract. However, it sems to us obvious that when the value of this strip was ascertained "as a part of the entire tract of which it forms a part," this necessarily included to some extent a part of the damages to the remaining portion. In submitting the issue of damages to the remainder of the tract, consideration is taken of damages caused by the severance of the part taken from the whole tract as well as of consequential damages to the remainder of the farm. From this it necessarily follows, it seems to us, that if the part taken be valued as a part of the entire tract of which it forms a part, there would be opportunity for double damages. The writer of the text in 16 Texas Jurisprudence, pages 988 and 989, seems to have recognized this. It is there stated:

"When the part condemned has a special value as constituting part of the whole tract, it is immaterial—unless it be important by reason of a set-off for special benefits—whether we say that the owner is entitled to compensation for the part condemned on the basis of the higher value, or that the award should be for the value of the part condemned, as severed land, plus depreciation by reason of the severance. The latter formula seems more technically correct; and it is submitted that it must be applied where accuracy is required in order to give due effect to the statutory rule that the diminution of the residue may be offset by special benefits."

The case of Jeffery v. Ry. Co., 138 Wis., 1, 119 N. W., 879, by the Supreme Court of Wisconsin, is almost directly in point. In that case the court said:

"Now the plaintiff was entitled to recover the fair market

value of the strip taken, and the damages to the other land occasioned by the taking; but, when they found in the first question the value of the strip taken considering it as a part of the plaintiff's entire tract and premises as used in his business, they necessarily found, not only the value of the strip taken, but some damage to the remaining premises. The value of the strip, considering its use in connection with the balance of the land as used in the plaintiff's business, necessarily involved the idea of damage to the remainder of the plant."

The true doctrine of just compensation is this: "Compensation is awarded not merely for the property taken, but for the taking of the property." It necessarily follows that if the part taken is valued in its relation to the whole, and the damage is allowed to the remainder because of the severance of the part taken, there is a duplication of damages.

In the case of Travis County v. Trogdon, 88 Texas, 302, 31 S. W., 358, this court said:

"In Railway v. Ferris, 26 Texas, 588, decided in 1863, this court held that the constitutional provision above cited, as then in force, required payment to the owner (1) of the intrinsic value of the land taken, without reference to benefits he might derive from the improvement, and that such claim could not be offset by such benefits; and (2) of any damage occasioned to the remainder of the property, in estimating which damages, the benefits to the remainder of the tract were legitimate subjects of consideration.

"After this construction of said constitutional provision, it was, as above indicated, incorporated without change into the Constitutions of 1866, 1868, and 1876; and in the case of Dulaney v. Nolan County, 85 Texas, 225, this court approved such construction, and applied the same to the provision of the Constitution now in force as above quoted."

Since this decision it has become recognized as necessary in practically all cases, in arriving at the just compensation to which an owner is entitled in condemnation cases, where a part only of a tract is taken, to take into consideration the two elements, towit, the fair market value of the part taken, or its intrinsic value in case there is no market value, and the damages occasioned to the remainder of the tract by reason of the taking and the construction of the improvement for which it is appropriated. In all cases where the element of offset on account of benefits is involved it is necessary to ascertain the value of the portion actually taken so that compensation may be paid therefor in money. In order, therefore, to avoid the possi-

bility of double damages the value of the part taken should be ascertained by considering such portion alone, and not as a part of the larger tract; unless, of course, the issue of damages to the remainder of the tract is not involved.

Great confusion is found in the decisions of courts of civil appeals as touching the method of submitting issues and instructing juries concerning the ascertainment of the other element of compensation, designated as the damages to the remainder of the tract. The trial court in this case sought to reach the correct result in having the jury ascertain the amount that the remainder of the farm was reduced in market value by the condemnation of the 8.03 acres. There were also issues intended to elicit a finding as to what extent, if any, the market value of the farm had been increased in the way of special benefits by reason of the condemnation and the construction of the road. In connection with the issue of damages to the remainder of the land the court instructed the jury that they could take into consideration numerous matters, such as construction of fences, the cost of construction of culverts, inconvenience arising from division of the farm, etc.

■ There were also instructions as to matters which the jury might consider in connection with the issue of whether or not the farm had been enhanced in value by reason of special benefits. Several of the matters mentioned in the instructions of the court had been pleaded as special items of damages, and we are of opinion that it was error for the court to single out these matters and instruct the jury that they might take them into consideration. The reason for this conclusion will clearly appear from the discussion which follows.

■ We are of the opinion that the proper rule for ascertaining the measure of damage to the remainder of a tract of land where a part only has been taken for public use is directly analagous to the rule which is applicable when there has been a permanent injury to land by reason of the construction of a public improvement, or the construction of an improvement by a private agency exercising the right of eminent domain. By this rule the damages are to be determined by ascertaining the difference between the market value of the remainder of the tract immediately before the taking and the market value of the remainder of the tract immediately after the appropriation, taking into consideration the nature of the improvement, and the use to which the land taken is to be put. Of course, this rule relates to the ascertainment of the damages to the property

itself. There may possibly be items of special damages which may not be accurately reflected in the difference between the market value before and the market value after, but everything which affects the market value of the land itself, having due regard for past and probable future injuries, may be accurately reflected by ascertaining the difference in value, when all the legitimate testimony is properly submitted to the jury for consideration.

While the decisions enumerate a great many things which it is said may be taken into consideration in assessing the damages to the land, and they are sometimes referred to as elements of damages, yet it will be seen on close consideration that they are merely evidentiary matters which in the last analysis are to be considered in arriving at the ultimate issue of the difference in market value. In the case of Boyer & Lucas v. St. Louis, S. F. & T. Ry. Co., 97 Texas, 107, 76 S. W., 441, which was a suit for damages to property by reason of the construction and operation of a railroad along the street adjacent to plaintiffs' property, the court said:

"The charge of the trial court contained no error of which the plaintiffs have cause to complain. It seems to be one of their contentions, that, if the property was rendered less useful for the particular uses to which they had put it, they would be entitled to recover damages as for a diminution in the value of such property, although its market value may have increased. This we do not understand to be the law. In estimating this item of damage, the effect of the construction and operation of the road upon the market value of the property is the measure. Railway Co. v. Fuller, 63 Texas, 467; Streyer v. Georgia S. & F. Ry. Co., 90 Ga., 56. Of course, the particular purposes to which property is devoted as well as others to which it is adapted, may be shown in evidence to enable the court and jury to determine its market value and the effect of the construction and operation of the railroad upon it; but when only the damage done to the value of the property is under consideration, that must be measured by its market value. In Alloway v. City of Nashville (88 Tenn., 510, 13 S. W. Rep., 123), the true rule is thus quoted from Lewis on Eminent Domain:

" 'The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into

consideration in estimating the compensation. Some of the cases hold that its value for· a particular use may be proved; but the proper inquiry is, what is its market value, in view of any use to which it may be applied, and of all the uses to which it is adapted? * * * The condtion of the property and all its surroundings may be shown and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. But, when all the facts and circumstances have been shown, the question at last is, what is it worth in the market?'

"Owners of property abutting on streets occupied by railroads may suffer damage besides the diminution of the value of their property as has been held by this court. Daniel v. Fort Worth and R. G. Railway Co., 96 Texas, 327. The present question relates only to the ascertainment of damage to the value of the property itself."

In the case of Currie v. Glasscock County, 212 S. W., 533, the Court of Civil Appeals used the following language:

"We are of the opinion that the court erred in its finding of fact and conclusion of law that no proof had been offered to show depreciation in value. The fact that the road necessitated additional fencing and establishment of an additional watering place in order to restore the land to its former usefulness and value for the purpose for which it was used by the owner was evidence of a depreciated value. The cost of additional fencing, establishing watering places, and other items of like nature necessitated by the laying of the road do not constitute a measure of damage and are not recoverable as distinct items of damage, but evidence of this nature is admissible, and is entitled to be accorded its proper probative force in determining whether the tract of land as a whole has been damaged. These are matters which may and should be considered by the jury or court trying the case. In like manner increased and better road facilities may be taken into consideration as offsetting such damage. In 3 Sedg. on Dam. sec. 1163, it is said:

" 'The measure of damages must not be confounded with the elements of damage, evidence of which is admitted for the purpose of enabling the jury to apply the rule. * * * The measure of damages in condemnation proceedings, stated in one of its most general forms, is the depreciation in the value of the property; for this is the same as the amount of injury to it. The value is most easily measured by the market, when there is one. Consequently, as we have seen, the rule with which we

most commonly meet is the difference between the market value of the property as affected and as unaffected by the improvement, or before the improvement, and as it will be after the improvement is completed. As a general rule, under any head of the law, where the measure of damages is determined by a difference in market value, it cannot be a matter of any consequence of what elements this is made up, and evidence giving the market value before and after the injury would be quite sufficient. * * * Land, however, has in many cases a very indeterminate market value, especially farming or wild land, such as is involved in perhaps the greater number of condemnation proceedings. Hence, it has become the practice to take evidence, not only directly as to the market value, but as to every element which enters into it, and tends to diminish it."

In the case of Parker County v. Jackson, 5 Texas Civ. App., 36, 23 S. W., 925, the Court of Civil Appeals, after referring to certain instructions given by the trial court, which were declared to be erroneous, used the following language, and also quoted with approval the statement from Sedgwick on Damages set out above:

"The measure of the damages in this class of cases, as we understand it, is—First, the value of the land taken for the second road, which had not been appropriated for the first; second, the depreciation in value, if any, caused to the remainder of the land of appellee by the change in the class of the road. In arriving at this second item of damage, the parties would have the right to introduce evidence of everything that would tend to affect the value of the land, in the estimation of a proposed purchaser, or that would tend to make it more or less valuable to the present owner, such as the shape in which the tract will be left; the increased amount of fencing, if any, that will be required; the increased expenditures made necessary to provide water; the added facilities, if any, provided for travel to the owner of the land. But this evidence is introduced, not as constituting the measure of damages, but as elements to enable the jury to arrive at the correct measure, which, as above stated, is the lessened value of the tract, if any, caused by these different elements, when all are taken into consideration."

To like effect are the cases of Kennedy v. Travis County, 61 Texas Civ. App., 547, 130 S. W., 844; Wise County v. McClain, 100 S. W., 802; Wichita Falls & W. Ry. Co. v. Wyrick, 147 S. W., 730; City of Rosebud v. Vitek, 210 S. W., 728.

Sedgwick, following the quotation set out above, uses this significant language:

"The two most common species of *proof* in condemnation proceedings are—1st, the elements of Value; and 2d, the elements of Damages. Under the first head is admitted everything which has a bearing on the value of the property; under the second, everything which enters into and makes part of the damage inflicted. These elements of damage and value are neither the measure of damages, nor are they allowed as specific items of damage. They go to the jury only to throw light on the general question of depreciation.

He then proceeds to say:

"As a general thing, therefore, where the rule laid down is the depreciation in market value, testimony tending to show the selling value of the property as affected by and as unaffected by the railroad or other improvement is the method of proof resorted to."

■ The matter is, therefore, reduced to one of proof as to market value and depreciation in market value, rather than to abstract questions as to what may or may not be considered by the jury in assessing damages. Aside from the value of the part actually taken, the true measure of damage to the remainder is the depreciation in value, "for this is the same as the amount of the injury to it." This being true, it is obvious that in submitting issues for the purpose of ascertaining depreciation in market value it is not proper to instruct the jury that they may take into consideration certain items or elements of damages, or to instruct them that they may not take into consideration certain matters. Of course, such instructions may become necessary at times for the purpose of attempting to withdraw or qualify testimony which has been inadvertently admitted or admitted for a limited purpose. Confusion has often arisen from the fact that in many cases the issue submitted to the jury was the issue of damages as such, and in many instances the cases were submitted on general charges. If an issue of damages as such to the land were submitted, it might become necessary in many instances to instruct the jury as to what were and were not proper elements to be taken into consideration, but in submitting the simple issue of the difference in the market value before and after, it sems to us proper that same should be submitted without instructions from the court, other than the formal definition of market value. It appears to us that in most if not all cases the whole matter of

what may be considered by the jury and what may not be considered will be best determined by the trial court in the admission and exclusion of testimony rather than by instructions to the jury. In that way the possibility of instructions upon the weight of the evidence, and also the possibility of the jury allowing damages upon the basis of special items, rather than determining the ultimate question of the difference in market value, will be avoided.

The matters of proof touching value as well as damages are so varied and multitudinous that only general rules can be formulated. The decisions of this court and of the courts of civil appeals have in most cases quite accurately disposed of the questions presented as to matters properly subject to proof in each individual case. See discussion and authorities cited in Sections 311, 312 and 339, 16 Tex. Jur. under "Eminent Domain."

■ Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value. Evidence should be excluded relating to remote, speculative and conjectural uses, as well as injuries, which are not reflected in the present market value of the property. See Worsham v. Galveston, H. & W. Ry. Co., 3 Wilson's Court of Appeals Civil Cases, p. 496, Sec. 425.

Elliott on Roads and Streets, Section 291, vol. 1, makes the following helpful comment upon the question of evidence as to market value:

"Witnesses acquainted with the market value of the land seized may state their opinion of its value. It is essential that some acquaintance with the value of the land in the market should be shown, but it is not material how the knowledge was obtained. The weight of the witness's opinion will in a great measure depend upon the acquaintance which he is shown to possess with the subject of values, and the facts which he gives as constituting the foundation of his opinion. It seems to us the better rule, although there is a sharp conflict in the authorities, that it is not competent to ask a witness how much damage a party has sustained, since this would be to put the witness in the place of the jury. It is, however, according to the weight of authority, competent to ask a witness, qualified to testify upon the subject, the value of the land before the way is opened

*and what its value* will be after the way is constructed. This does not invade the province of the jury, because it simply asks for the opinion of the witness as to values and not as to damages. It is difficult to perceive how any other rule than that stated can be maintained on principle. No matter how minutely lands and their surroundings may be described, a jury, unless possessing peculiar knowledge of the matter in controversy, can not, without the judgment of persons acquainted with values, justly determine the injury or benefit which accrues to the landowner by the opening of a highway or the construction of a ditch. The object of evidence is to place before a jury all the facts essential to a just decision of the merits of the legal controversy, so that the rights of the contestants may be justly determined, and this object is defeated unless testimony as to the value of the land with and without the highway is allowed to be introduced. Without some guide of this character the verdict must be the product of conjecture rather than a conclusion from proved facts."

■ In addition to the instructions mentioned, the court instructed the jury in the language of Article 3265, Revised Statutes, 1925. This was unnecessary, confusing, and amounted to a general charge. Plainly, the provisions of Article 3265 are intended primarily for the guidance of commissioners, who are not under the supervision of a court, and are not intended to furnish a method of trying a condemnation case before a court and jury. Such article does constitute a statutory recognition of the general rules for arriving at just compensation. As said article contains a provision with reference to benefits, and as the question of benefits is usually involved in most condemnation cases, it becomes necessary to discuss briefly the question of benefits and the most suitable method of submitting that question to a jury.

Section 4 of said Article 3265 is as follows:

"In estimating either the injuries or benefits, as provided in the preceding article, such injuries or benefits which the owner sustains or receives in common with the community generally and which are not peculiar to him and connected with his ownership, use and enjoyment, of the particular parcel of land, shall not be considered by the commissioners in making their estimate."

■ This language is almost a verbatim reproduction of language found in the case of Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467, and of course is applicable in the trial of a case by

a court and jury, as well as in a proceeding by commissioners. For various reasons, we have concluded that a trial court in the admission and exclusion of evidence cannot eliminate all evidence of "community" benefits and injuries as touching questions of value and depreciation in value. As indicated above, the correct method of adducing evidence as to market value is by witnesses, after suitable qualification, giving their opinion as to the market value of the residue before and after the taking, rather than undertaking to testify to specific items of injury and damage. See Gainesville, H. & W. Ry. Co. v. Hall, 78 Texas, 175, 176, 14 S. W., 259, 9 L. R. A., 298, 22 Am. St. Rep., 42. If the witness answers that there has been a depreciation or an enhancement in the market value after the taking, in either event it is proper to question him as to the basis of his opinion and the matters he has taken into consideration in arriving at his opinon. If he should testify that among the things he has considered in arriving at his opinion of market value were "community" benefits or injuries, but that there were other things of a legitimate nature which influenced his opinion, this should not invalidate his evidence altogether. For this reason, among others, it occurs to us that the matter cannot be controlled altogether in the admission and exclusion of evidence. It follows, therefore, that without some limitation or instruction in the charge, a finding of market value of the land after the taking would necessarily include value contributed thereto by community benefits as well as special benefits. It is of course settled that enhancement in market value of the residue of the land by reason of "special benefits" is a legitimate offset to damages thereto, but not to the value of the part actually taken. The statute has not defined "special benefits." It has only undertaken to define community benefits and negatively authorizes all other benefits to be taken into account. A finding as to market value would include such benefits, and should do so. It should not include, however, value because of community benefits and for this reason we have concluded that provision should be made in the charge for excluding such benefits. We think this can be more appropriately done by proper special issues rather than by an instruction of the court.

As this case is to some extent a representative one, and as it must be reversed and remanded for another trial, we are suggesting what occurs to us is a proper method of submitting same; on the assumption, of course, that it will be submitted on special issues. Without intimating that this method should be followed in all like cases, we believe it will furnish a practical

method of submission in most similar cases. We suggest the following special issues:

Question No. 1. From a preponderance of the evidence what do you find was the market value of the strip of land condemned by the State for highway purposes at the time it was condemned, considered as severed land?

Answer in dollars and cents.

Question No. 2. From a preponderance of the evidence what do you find was the market value of defendants' tract of land, exclusive of the strip of land condemned, immediately before the strip was taken for highway purposes?

Answer in dollars and cents.

Question No. 3. Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendants' tract of land immediately after the taking of the strip condemned for highway purposes?

Answer in dollars and cents.

You are instructed that the term "market value" is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it.

Judgment will be in favor of defendants in any and all events for the amount found in reply to Question No. 1, and will also be the depreciation in value, if any, as found by the jury in answer to Questions No. 2 and No. 3.

The judgments of the Court of Civil Appeals and of the trial court are hereby set aside and the cause is remanded for another trial.

Opinion adopted by the Supreme Court January 8, 1936.

### ON MOTION FOR REHEARING.

In motion for rehearing by defendant in error our attention is called to the fact that there was an inadvertent omission of certain words in the definition of market value. The definition should have been as follows:

█ You are instructed that the term "market value" is the price

the property will bring when offered for sale by one who desires to sell but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.

Our attention is further called to the fact that in this instance there were certain improvements upon the 8.03 acres of land which, it is stated, it was necessary for the owner to remove and that he incurred expenses in doing so. We are called upon to say that he should be allowed a recovery of this item as a separate item of damages. It is significant to note that this item appears to have been taken care of on the former trial by being taken into consideration in connection with the depreciation of the value of the land. There was no special issue covering this item. The trial court, after charging the jury that they might take into consideration "the reasonable cost of removing and reestablishing improvements from the right of way," cautiously added, "but these matters can only be considered by you as affecting the market value of the land, if they do affect it."

It is a general rule that improvements situated upon the portion of land taken are to be considered as a part of the realty. They ordinarily have no market value separate from the land. Therefore when such improvements are taken or destroyed their value can be reflected in the finding as to the value of the land taken, and evidence of their value is admissible for that purpose. As an alternative, however, if the improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction, is necessary in order to obviate the depreciation in the value of the residue, the cost of removal, and/or reconstruction and/or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder. See State v. Lowrie, 56 S. W. (2d) 676.

■ The better general rule with reference to fences, which may also be applied to certain other improvements, is stated in 2 Lewis on Eminent Domain, Sec. 498, in this language:

"Where, by taking a part of a tract, additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast upon the owner of the land, then the burden of constructing and maintaining such fence, in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages. . . . It is a question of damage to the land, as land.

If, in view of the probable future use of the land, additional fencing will be necessary, of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it."

See also cases cited in Annotation at pages 455-458 of 10 A. L. R.

■ This opinion must not be construed as attempting to furnish an inflexible rule to be followed in all similar cases. The main purpose of this general discussion has been to emphasize the necessity of obviating, as nearly as possible, the submission of specific items of damages in condemnation cases, and to avoid elaborate instructions by trial courts as to matters which may or may not be taken into consideration in arriving at the ultimate question of depreciation in the market value of the remainder of the tract of land when a part has been taken. Fair and just compensation to the owner for the land condemned and for damages to the remainder is the end sought to be attained. We realize that this result cannot be reached in every case by following the general rules here outlined. If in the exercise of a sound discretion the trial court should find that just compensation, from the standpoint of the condemnor as well as the owner, cannot be arrived at without directing attention to specific items of damages, either by instructions or in special issues, such action need not necessarily be erroneous, so long as a double recovery is avoided and undue emphasis is not placed upon some specific item of damages or injury.

■ We have again carefully considered the question of the proper method of submitting the issue of value of the tract of land taken, and are still of the conclusion that when damages are sought because of depreciation in the market value of the remainder of the tract, the proper method of submitting the question is as stated in our original opinion. If it be true, as argued by counsel in this case, that the 8.03 acres of land taken was, when considered as a part of the farm, worth $100.00 per acre, it necessarily follows that the value of the farm as a whole included the sum of $803.00 by reason of this 8.03 acres being included therein. If, after the land was severed from the tract, the 8.03 acres was worth, as severed land, only $100.00, it must follow, it seems to us, that when proof was made of this

fact, a jury would necessarily conclude that the value of the balance of the farm had been diminished $703.00 by reason of the severance of the strip alone. If the value of the remainder has been increased by reason of other things, the owner has no right to complain, because it is well settled that damages to the remainder may be offset by benefits such as are allowed by law. At the same time, with a finding as to the intrinsic value of the part taken, the owner's right to the just compensation guaranteed by the Constitution is protected, regardless of benefits. This, in the last analysis, appears to be the controlling reason for submitting the question as to value of the part taken as a separate issue. In a large majority of the states the rule adopted for ascertaining just compensation is to determine the depreciation, if any, in the value of the farm as a whole as a result of the condemnation and construction of the improvements.

The motion for rehearing by defendants in error is overruled.

Opinion adopted by the Supreme Court February 19, 1936.