### MAYBEN v. STATE.
### No. 1987.

Court of Civil Appeals of Texas. Eastland.

April 12, 1940.

Rehearing Denied May 24, 1940.

J. E. Garland, of Lamesa, for appellant.

Carl Rountree and Vernon D. Adcock both of Lamesa, for appellee.

GRISSOM, Justice.

This is an appeal from a judgment in a condemnation proceeding, instituted by the State, acting through the Commissioners' Court of Dawson County, Texas, wherein a right-of-way across Sam Mayben's farm was condemned for use as a state highway. The Commissioners awarded Mayben $211.-95 for the land taken for highway purposes. No question is presented as to said award for the land actually taken. The jury failed to award any damages to the remainder of Mayben's farm not taken for highway purposes. From a judgment denying compensation to Mayben for damages to his land not taken for highway purposes, he has appealed.

Mayben's contention is, in substance, that the undisputed evidence shows he sustained injuries peculiar to him and connected with his ownership, use and enjoyment of that part of his farm not actually taken for highway purposes, and further that the undisputed evidence shows the benefits he received, by the increase in the value of said land, if any, by virtue of the building of the highway, were not benefits peculiar to him, but were such as were received in common with the community generally.

The evidence discloses that the new highway, instead of running along the east side of Mayben's 480-acre farm and parallel with its east boundary line, as the old road or highway does, entered Mayben's farm a very short distance west of its southeast corner and gradually curves northward, cutting off a very narrow strip of land in the southeast corner, which strip gradually grows larger as the highway goes northwest, leaving the north boundary line of the 25-acre strip so cut off apparently several times the length of its south boundary line. There are two sets of improvements on the 480-acre farm. The new highway divides the two sets of improvements leaving on the larger tract, of about 347 acres, a three-room residence, barn and well lo-

cated near the southeast corner of said tract, and a two-room house, barn and well on the 25-acre tract cut off by the highway, said improvements being located near the northeast corner of said 480-acre tract. The evidence shows that the building of the highway in the manner and at the place at which it was built, will require fencing by Mayben of his farm adjoining the highway so that it may be used for the purpose and in the manner substantially as it has been heretofore; that the new highway comes slightly closer to one set of improvements than before, the main house being approximately 40 or 50 feet from the outside edge of the new highway and several trees were dug up at this residence to make room for the highway; the drainage and flow of water has been affected by the building of this highway, resulting in the formation of a lake upon the main tract of land that will prevent the use, for agricultural purposes, of about 10 acres of land upon the larger tract. That the removal of some of the improvements will probably be necessary for a proper and reasonable use of the new premises.

There was evidence by witnesses for the State to the effect that farms belonging to said witnesses had been crossed by another highway in the county and that said witnesses' farms had increased in value as the result thereof. There was also evidence that, in the opinion of said witnesses, the value of Mayben's farm had been increased by the building of said highway across it. With the exception of the witness, Wade Bartlett, who was Mayben's witness, and whose testimony does not raise the issue of special benefits to Mayben's land, both the State and Mayben rely upon the testimony of the same three witnesses to support their respective contentions that the evidence was, or was not, sufficient to make it a question for the jury whether or not Mayben's land, not taken for highway purposes, received benefits peculiar to Mayben, and not received generally by the landowners in that community. Said witnesses are L. B. Stewart, H. H. Barron and Elmer Barron.

H. H. Barron testified, in substance, that he owned 160 acres "south of town"; that highway No. 9 (not the highway in question) in 1934 (not the time in question) crossed his said farm, "angling across it", cutting off about 35 acres on the east side. That, in his opinion, the value of said 35 acres, so cut off, was increased $10 or $15 per acre. With reference to the effect of the highway in question being built across Mayben's farm, the witness testified:

"Q. Now, just as a general proposition, I believe that your's has advantages that are not had out here with this land of Mr. Mayben, but as a general proposition, this highway should it run diagonally across it and cut off about twenty-five acres of land with one set of Mr. Mayben's improvements and cutting off the remainder of his cultivated land with the other set of improvements, do you think that that would increase the value of his land under those conditions? A. It is owing to the distance it is from town. I don't know just how far it is out there.

"Q. We will say three miles from town. A. That is about the same distance as mine.

"Q. Yes. A. I think it would. I think on the smaller tract of land.

"Q. Well, the fact that it came to a point, say one end, the south end, was one inch wide and the north end about two or three hunderd yards, do you think that would have any difference, make any difference in a man selecting it for a home? A. It would make some.

"Q. To the advantage or disadvantage? A. Disadvantage.

"Q. How much an acre do you think that would damage it being cut into that shape, how much would it damage that farm? A. Well, it is owing to how he handled it and how he sold it out. * * *

"Q. Now, Mr. Barron, don't you feel that the splitting of a farm that way disregarding general benefits that the road would bring, general to the community, don't you feel that it would really be a special injury to that place for it to run in that condition through there? A. Well, I don't think it would benefit him as much as it would a fellow that got the benefit that didn't have his land cut. * * *

"Q. Well, what we are trying to get at is the special advantages to this particular tract of land. Now, are there any advantages to that particular tract that are not general to the community or the adjacent lands by reason of that highway running through the farm? A. No, not where the highway is easy to get to.

"Q. Where it is in the immediate vicinity? A. Where it is easy to get right on it and come right to town. * * *

"Q. Then, Mr. Barron, as I understand it, it is your opinion that this Mayben farm would be worth more money with this highway running across it, even though it does cut this little tract off, though it runs across it, than it was before, that it will enhance the value of it, is that correct? A. Yes, it will increase the value of it some.

"Q. It would also increase the value of all adjacent land the same, wouldn't it, wouldn't be a special enhancement of value to that particular tract but general to the community? A. Those that touched the highway, where the highway is easy to get to, would be the same."

Elmer Barron testified that, in his opinion, the building of the highway across Mayben's farm would increase the value of the farm as a whole, but he further testified:

"Q. Now, the enhancement in value that you mentioned, that would be general to land in that vicinity wouldn't it, in the whole vicinity? A. Yes.

"Q. And not special to this particular tract? A. Yes."

We think it is evident the testimony of the Barrons, when properly understood, is to the effect that the increase in the value of the land caused by building the highway was a benefit received in common with the community generally, and not peculiar to Mayben.

A fair and proper interpretation of the testimony of the witness Stewart is perhaps more difficult. He testified:

"Q. Well, take this 480 acre tract of land out here of Mr. Mayben's, and it has two sets of improvements on the east side that he uses in working the western portion of it and this highway comes along there and whenever it strikes his place, instead of going to the side it just kind of takes a curve around and carves him out 25 acres over on the east side away from his improvements? A. Yes sir.

"Q. Now do you think that that would be an enhancement to the market value of the land for that to have occurred? A. I think so, yes sir."

He further testified, in substance, that he was of the opinion that some person would come along who would want to buy the 25-acre strip; that there was a demand for small tracts of land. Stewart further testified that he owned a farm, now 9 miles southeast of Lamesa, that was at some time crossed by highway No. 9, that the highway "angled across it", cutting off 425 acres on the west side of the highway and 200 acres on the east side of the highway; that the building of said highway across the witness's land increased its value. That before the road was built the witness was 14 miles from town; that afterwards he was 9 miles from town. That in addition to the increase in convenience in getting to town there had been a saving in his expenses in transporting his farm products to market. But, with reference thereto, he further testified:

"Your neighbors down there in your community, they didn't get the same benefits that you did? A. On the road?

"Q. Yes, the reduced marketing expense and hauling products to town and other things like that? A. I would think they do.

"Q. They do? Then they were general? A. I think they would be.

"Q. Those benefits you are talking about were general to the community? A. I think if a man wanted to use it, he would have it there to use."

Comparing the witness's situation with Mayben's he testified: "Q. But you happen to have a special advantage that you had your house in the center and the road ran through the center of your section, that is where your advantage came wasn't it? A. Yes sir."

If there is evidence from said witness raising the issue as to whether or not Mayben received benefits peculiar to him, and not general to those in the community, it arises from the witness's testimony to the effect that in his opinion there will be a ready sale, at a high price, for the small strip of land because there is a greater demand for small than large tracts of land so situated. If this new highway, instead of curving across the east end of Mayben's land, had run adjoining to and parallel with the east line of Mayben's farm, where the old road or highway is, if said witness's opinion is correct, Mayben could have voluntarily carved 25 acres off the east end of his farm and sold it for a larger price than the rest of the farm, and at a higher price than it could have been sold for before the highway was there. Had this been done, we think it could not have been reasonably contended that such increase in the value of said 25-acre strip, so supposedly severed by Mayben voluntarily, was a

special benefit to him and one not general to the community resulting from the building of a hard-surfaced highway adjacent to the farms of that community. If this is true, where the building of the highway has done no injury to Mayben's property, then it is certainly true that the building of the highway, under the situation disclosed, which did injure Mayben, did not specially benefit Mayben by curving across the east end of his farm and cutting off the peculiarly shaped 25-acre tract of land. We think when the evidence is carefully considered and understood, it is wholly insufficient to make it an issue for the jury, or to support the jury's presumed finding, that the State in so building its highway across Mayben's land, conferred special benefits upon Mayben in contradistinction to benefits received generally by landowners in the community as a result of the building of a hard-surfaced highway in that community. Subdivisions 3 and 4 of Art. 3265, R.S. 1925, provide:

"When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution and shall assess the damages accordingly.

"In estimating either the injuries or benefits, as provided in the preceding article, such injuries or benefits which the owner sustains or receives in common with the community generally and which are not peculiar to him and connected with his ownership, use and enjoyment, of the particular parcel of land, shall not be considered by the commissioners in making their estimate."

Applying the facts to the provisions of said statute we find that Mayben has received some injuries or damages peculiar to him; that the benefits he has received are only such as were received by him in common with the community generally. Art. 3265, R.S. 1925; 16 Tex. Jur. 992, 1014; State of Texas v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 199. Mayben is entitled to some compensation for the damage done his land not taken for highway purposes.

We are convinced that our former interpretation of the evidence was erroneous. The appellant's motion for rehearing is granted, our former opinion is withdrawn, and our judgment of affirmance is set aside; the judgment of the trial court is reversed and the cause remanded.