The STATE of Texas, Appellant,

v.

J. F. CHRISTIAN et al., Appellees.

No. 6571.

Court of Civil Appeals of Texas.

Beaumont.

March 5, 1964.

Waggoner Carr, Atty. Gen., Austin, for appellant.

Sexton & Owens, Orange, for appellees.

HIGHTOWER, Chief Justice.

This is a condemnation suit brought by the State of Texas against J. F. Christian and certain of his lien holders to condemn 1.685 acres of land out of a 12.056 acre tract located in Orange County, Texas. The purpose of the taking was for the construction of a new controlled access highway, Interstate Highway 10. After the taking, the landowner Christian owned a remainder of 8.18 acres on the north side of the new highway and 2.191 acres lying between the south side of the new highway and the north side of U. S. Highway 90.

In reply to special issues submitted in accordance with those suggested in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, the jury found the value of the land taken to be $4,000.00. It found values of the remaining property immediately before and immediately after the taking to be $61,-950.00 and $50,750.00, respectively; thus, a diminution in value to the remaining property of $11,200.00. State has appealed from the judgment of the trial court which was entered upon these findings of the jury. Its most serious contentions relate to the admission of evidence concerning the loss of trade to appellees' business due to construction of the new highway. The following facts were developed by the evidence.

The business owned by appellees, Mr. and Mrs. J. F. Christian, was known as a

truck stop. It was on the north side of U. S. Highway 90 just west of Orange, Texas, for several years prior to the filing of the condemnation suit. Their land has some 250 feet of frontage on U. S. Highway 90 and their property was some 2,000 feet deep. The highway property in front of the Christian tract was improved with a culvert and driveway extending substantially the full width of the frontage. The driveway led onto the Christian property where was located a well-constructed, two-story building which served as a cafe and filling station. A short distance to the west was located another building referred to as a wash and grease rack. The area immediately in front of these buildings was paved with a concrete ramp. The front of the cafe and filling station had doors and plate glass windows. To the rear was located the Christian residence, a garage and a small tenant house. Along the east side of the property extending northward some 700 or 800 feet was a strip of land 50 feet wide which had been dedicated for road purposes. At least a portion of the east side was paved where trucks could park.

When the new highway was built, it was located some 400 feet north of U. S. Highway 90 and behind the truck stop and residence buildings on the Christian tract. The only improvements within the taken area were a barn, a pond and fences. Behind the taken area is now the Christian's north remainder extending some 1,400 feet back from the new highway.

At the time of the trial the new highway had been completed and opened to traffic and Highway 90 was still open and the access therefrom to the remaining southern portion of the Christian property had not been impaired. After the new highway was opened most of the traffic preferred to travel thereon rather than Old Highway 90. As a result of the loss of traffic on the old highway, appellees' business suffered.

At the outset of the trial the court overruled State's motion to suppress any evidence of appellees' loss of business due to loss of traffic on Highway 90 by reason of the construction of the new highway. Throughout the testimony of the witness Hall, counsel for appellees consistently and repeatedly questioned him regarding the public's preference to use the new highway instead of the old one. Just as consistently and repeatedly counsel for State was required to object to such questioning, informing the court that the questions and answers were inadmissible for several stated reasons, among them being that "it was an attempt to recover damages to which the appellees were not entitled." All of State's objections were overruled by the court, and Hall was permitted to give his opinion that appellees' remaining property had been damaged because of the preference of the public to travel the new instead of the old highway.

A review of other testimony is necessary in order to pass upon the questions of both admissibility and harm. The witness Breazeale was permitted to testify in substance as follows: He examined appellees' property as a contractor, not as an expert appraisal witness. He had made a study of the cost of moving the tenant house, the residence and the garage and lining them up on the west side of the property facing east, setting them back on sills, hooking them all up to a septic tank and up to water, electricity and gas. The cost of this work would be $3,150.00. It would cost $2,150.00 to build a steel frame canopy on the back of the building facing the new highway like the one on the front facing the old highway. Laying concrete culverts along the new frontage, building driveways up to the houses lined up on the west side, removing a few pine trees, building a driveway from the northwest corner over to the east side to the northeast corner down the line on the east side then back to the west side of the service station would cost $8,150.50. Moving the electrical service from the rear (which would be the new front) to the side would be $650.00. Pouring a con-

crete slab on the back side of the service station facing the new highway, the same as the one on the front of the service station, $1,920.00. Six billboard signs on the highway similar to Stuckey's and Conn's directing traffic to his location, $2,400.00. A new well, $895.00. Installing a concrete pipe at the access road from the west side to the east side, putting in four manholes and leveling it off with dirt (thus having a driveway on the new highway like the one on the old highway), $2,110.75. Rearranging doors and windows so that he could serve his customers from the back side of the building and draining the water off of the roof so that it would not seep down on the customers, $1,727.75. He stated that all of these alterations and additions, which totaled $23,150.00, were not depreciated but were for new construction which was necessary to bring the property back up to where it was before.

Mr. Davis, appellees' only valuation witness, placed a value of $61,700.00 upon appellees' remaining property immediately before the taking and $30,700.00 immediately after the taking; thus, a diminution in value or damage figure of $31,000.00. On voir dire and cross-examination of this witness, in an effort to establish that the opinion of Mr. Davis was based upon inadmissible matters, State elicited the following testimony: In arriving at the value of the remainder, Davis took into consideration the fact that the traveling public has a preference to travel over the new highway instead of the old one. He had heard Mr. Breazeale's testimony. He had discussed the various parts of the $23,-150.00 improvement and remodeling job that Mr. Breazeale had outlined and had considered the same in trying to determine what it would take to conserve the highest and best use of the remaining property. The remaining property had decreased $31,-000.00 in value and $23,150.00 of that was due to the matters that Mr. Breazeale had detailed.

"Q. Mr. Davis, does the defendants', Mr. and Mrs. Christian's, south property have the same highest and best use now that it did before, after the taking as it did before?

\* \* \* \* \* \*

"A. It could be used as the same thing before the taking, except that you do not have any appealing features to any traffic that is traveling on the new highway, you do not have any convenient access to it \* \* \*

"A. And, therefore, in my opinion it would not be, unless he does spend some money to convert it back to its highest and best use and where it can be utilized to its highest and best use— a business cannot be profitable any longer on it.

"Q. In other words, it's based on the traffic being on IH 10 instead of an Old Highway 90?

"A. Well, you have traffic on both of them. We still have some traffic on Old Highway 90, but you also have, I think, a majority of your traffic will now be on IH 10.

"Q. And that's the reason you have been telling us that it needs to be converted?

"A. It needs to be converted in order to still attract customers to the place of business, and so on.

"Q. Most of which are now on IH 10 instead of Highway 90?

"A. I would say the biggest majority of it is staying on IH 10.

"Q. Do truck drivers generally prefer to travel on IH 10 instead of Old Highway 90, is that what you are saying?

"A. I think most of your truck travel will be on IH 10. You will have places where they will turn off IH 10 to get to a place they care to go to or care to cater or they care to trade with, but your travelling will mostly be done on IH 10."

Whereupon State moved the court to strike all of the foregoing testimony relative to the inadmissible sum of $23,150.00, for improvements. The motion to strike was overruled. Numerous other assignments in State's motion for new trial complained that the testimony relating to the $23,150.00 worth of improvements and the change of the traffic pattern on the old and new highways was inadmissible and prejudicial for one reason or the other.

The appellee Christian was permitted to testify in substance as follows: He had heard Mr. Breazeale's testimony and it is his opinion that it is necessary to spend sums of money in keeping with those stated by Breazeale in order to continue utilizing his property at its highest and best use. In the past few years his truck drivers business has been heavy. At one time, before the construction of the new highway, he counted the trucks. They were lined up on both sides of the road, down each side of the station, all in front and back. There were 58 trucks there at 2:00 in the morning. If he spends the money that he thinks is necessary he can continue to hold these customers. He had approximately 85% of the truck drivers on Highway 90 and believes that in a little time he can get them back.

▆▆▆▆ The trial court should have sustained State's motion to suppress any evidence of appellees' loss of business due to the loss of traffic on Highway 90 by reason of the construction of the new highway, and it erred in admitting in evidence, over objection, the testimony of the witness Breazeale and others covering the cost of reconstructing the filling station, restaurant and premises in general so appellees' business would face the new highway as well as the old.

The recent Supreme Court decision, State of Texas v. Baker Bros. Nursery, Tex., 366 S.W.2d 212, has laid to rest any law or doubts to the contrary. That condemnation case also involved a limited access highway. Referring to Art. 6674w, Vernon's Ann.Civ.St., which was enacted by the Legislature in 1957, the court adopted and quoted the following holding in Pennysavers Oil Co. v. State, Tex.Civ.App., 334 S.W.2d 546:

"The State has the right under the provisions of Art. 6674w, supra, and its police power, to provide for one-way traffic, no U turns, division barriers, no left or right turns, traffic lanes, speeding and parking regulations, circuitous routes; for the changing of highways generally, and is not responsible for loss of trade to abutting landowners as a result of the exercise of this police power, so long as it does not amount to a complete taking of the right of access."

▆▆▆ Essentially, appellees are in the position of seeking to recover damages for loss of trade to their business occasioned by the limited and inconvenient ingress and egress to their place of business due to the construction of the new highway. An individual whose property abuts a public way does not have a vested interest in the travel thereon. The testimony of Breazeale and particularly Davis informed the jury that appellees had suffered damages of $23,150.00 by reason of loss of business due to the construction of the new highway. There is no question but what appellees' business suffered severely by reason of said construction and the public's preference to use the same, but such was damnum absque injuria. In legal contemplation there was actually no evidence to support the damage award.

In support of its contentions, appellees rely heavily on the cases of City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176, and Milam County v. Akers, 181 S.W.2d 719, ref. w. m.

These cases are not in point inasmuch as neither of them approved recovery of damages for loss of trade to a business due to the public's preference to travel a new highway or the public's inclination to

forego trade with a business because of the inconvenient ingress and egress to the same. Any implications that might exist in these decisions to the effect that damages are recoverable under the record of this case are considered overruled by the holding in Baker Bros. Nursery, supra.

It is not deemed necessary to consider State's other points of error. Because the errors heretofore alluded to were reasonably calculated to cause, and did cause, the rendition of an improper judgment, the judgment of the trial court is reversed and remanded.