**TEXAS ELECTRIC SERVICE COMPANY,** Appellant,

v.

**Leslie A. MYERS, Appellee.**

**No. 16562.**

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 18, 1964.

Rehearing Denied Oct. 16, 1964.

Fillmore, Schaeffer & Fillmore, Wichita Falls, Cantey, Hanger, Gooch, Cravens & Scarborough, and Jack C. Wessler, Fort Worth, for appellant.

Friberg & Parish, Philip S. Kouri and David A. Smith, Wichita Falls, for appellee.

RENFRO, Justice.

Appellant acquired, by condemnation, an easement of right-of-way for electric transmission lines which embraced an area of 8.26 acres out of a tract of 95.7 acres.

Neither side complains of the amount of the jury award for the strip taken.

In answer to issues 3 and 4 the jury found the before and after market value of the remaining 87.4 acres to be $43,700 and $34,960 respectively.

Appellant's one point of error contends there was no evidence to support the answers to issues 3 and 4.

The appellee's evidence shows his land abuts Burk's Drive on the north. Burk's Drive is paved and there are eleven residences on said Drive within a half mile of his land. Land within a block of appellee's land is being sold for residential purposes. There is a second street approximately 1000 feet east of his land. The land owned by appellee is rectangular in shape. Appellant's power line runs from the north boundary to the south boundary through the center of the tract, lengthwise.

Another line runs from the above line to the east boundary line of appellee's land, about two-thirds of the distance from the beginning point on the north boundary line to the south boundary line. There remains 46 acres west of the power line, 25 acres in the northeast corner of the tract north of the "short" power line, and 16.4 acres in the southeast portion of his land, south of the east-west line and east of the north-south main line. Appellant erected six large towers on the north-south easement and four on the west-east easement. One tower is only 12 feet from Burk's Drive. The taller towers are 100 feet tall.

Appellee testified his land is flat and level except for one small meandering creek. His land is 1000 feet from the Wichita Falls city limits.

The witness Southers, who lives nearby appellee's land and is familiar with the land, testified the market value of the land was $1000 per acre before and $200 per acre after the taking.

Witness Hill, a real estate dealer and residential subdivision developer, testified: the west 46 acres of appellee's land had a market value of $1000 per acre before and $700 per acre after the taking; the northeast 25 acres had a before value of $1000 per acre and an after value of $500 per acre; the southeast 16.4 acres had a $1000 per acre value before and a $300 per acre value after the taking; the land is close to utilities and is approximately 7 miles from downtown Wichita Falls; he developed the Meadow Lake residential subdivision, 9 miles from downtown Wichita Falls, in the general area of appellee's land; sewer and water lines were a mile away from his Meadow Lake development; there is a sewer line 1900 feet and a water line 1000 feet from appellee's land; the 46 acres west of the easement strip is large enough to allow proper planning to be carried out to a certain extent; the northeast 25 acres could be planned better than the 16.4 acre tract, but "The 16 acre tract is just almost ruined by being surrounded by the lines." Thus, according to his testimony, the market value of the remaining 87.4 acres, as trisected by the easement, was $49,620, which was $37,780 less than his opinion as to the market value of the 87.4 acres before the taking. His testimony is that the decreased value ($11,480) of the "just almost ruined" 16.4 acre portion alone was greater than the amount of decreased market value of the entire remaining 87.4 acres found by the jury, namely $8,740.

Appellant's witness Wilkins admitted that a tract of land with sewer lines within 1900 feet and water lines within 1000 feet would be more valuable for development purposes than a tract with sewer and water lines a mile away.

In addition to the oral testimony the jury had the benefit of exhibits and a great number of pictures of the land and the power lines.

"Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value." State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936).

The evidence summarized above shows there was some evidence, within the above rule, to support the jury's findings.

The no evidence point is overruled.

Judgment affirmed.