**C. T. McLAUGHLIN, Appellant,**

v.

**Ralph W. BALL, Appellee.**

**No. 4192.**

Court of Civil Appeals of Texas.

Eastland.

Sept. 29, 1967.

Rehearing Denied Oct. 27, 1967.

Nunn, Griggs & Beall, Sweetwater, for appellant.

Cade & Bowlin, Lubbock, for appellee.

COLLINGS, Justice.

Ralph W. Ball brought suit against C. T. McLaughlin seeking damages for breach of contract. Ball alleged that he secured certain oil and gas leases in the State of Colorado and subsequently assigned such leases to defendant McLaughlin; that each of such assignments provided that if the defendant elected to exercise his right to surrender the leases by failing to pay delay rentals he would give plaintiff written notice thereof sixty days prior to the rental payment date and would reconvey said leases to Ball if demanded to do so within thirty days from Ball's receipt of Mc-Laughlin's notice of the exercise of his right to surrender. The case was tried before a jury which in answer to a single special issue found that the market value of the leases during the period in which such notice should have been given was $5.00 per acre. Based upon the verdict judgment was rendered for the plaintiff in the sum of $6,400.00. C. T. McLaughlin has appealed.

The record shows that prior to November 27, 1962, appellee Ball was the owner of certain oil and gas leases covering three non-contiguous tracts in the State of Colorado. The three tracts total 1360 acres in area but due to the existence of a small interest in one of the tracts which was not covered the total acreage under lease amounted to 1280 acres. On November 27, 1962, appellee assigned the leases to appellant McLaughlin and each assignment contained the following clause:

"Assignee shall always have the right to release and surrender the lease hereby assigned, provided that before releasing or surrendering, and at least sixty days prior to the next rental due date, he shall first notify assignor in writing of his intention so to do, and upon demand by assignor, if made within thirty days from the receipt of such notice, assignee shall reassign to assignor the rights and interests which he has indicated in his notice that he desires to release or surrender."

Each of the leases was for a primary term of ten years except one partial lease dated December 19, 1961 which would expire in the absence of production on November 8, 1967. The ten year leases were dated in November and December of 1961. Each of the leases provided for delay rental payments of $1.00 per acre payable upon the anniversary dates of the leases.

Each of the assignments from appellee to appellant contained a provision that:

"The Assignor herein hereby expressly excepts, reserves, and retains title on an undivided 1% of 100% of all oil, gas, and casinghead gas produced, saved, and marketed from the above described land under the provisions of the aforesaid lease, or any extension or renewal thereof, an overriding royalty, free and clear of any cost and expense of the development and operation thereof, excepting taxes applicable to said interest and the production therefrom."

After receiving the assignments appellant held the leases without development for a period of more than one year but with the approach of the time for delay rental payments for the period of 1964–1965 he elected not to renew or extend the leases by paying further delay rentals and the leases were allowed to lapse. Through a clerical error appellant failed to notify appellee of his intention not to pay such delay

rentals. It is undisputed that appellant failed to comply with the contractual provision of the assignments. The only issue in the case is the amount of damages which appellee is entitled to recover. The parties are agreed that the measure of damages in such cases is the value of the leasehold estate lost. This issue as heretofore indicated was submitted to the jury which found that the fair market value of the leases during the period in question was $5.00 per acre.

Three witnesses testified concerning the value of the leases. These witnesses were appellee Ralph W. Ball, appellant C. T. McLaughlin, and Arthur M. Guida, who testified that he was active in dealing in oil and gas properties in Washington County, Colorado where the leases in question were situated. Appellee Ball testified that he was familiar with the value of oil property in the vicinity, and that in his opinion the value of the leases at the time in question was $5.00 per acre. He also testified that in arriving at this figure he took into consideration the value of the 1% override created in the assignment from appellee to appellant. Appellant McLaughlin testified that when he acquired the leases by assignment from appellee he paid $1.50 per acre therefor but that out of this sum appellee was required to pay the $1.00 delay rentals which were then becoming due; that appellant during his ownership of the leases in 1963, contributed 50¢ a foot amounting to about $2500.00 to the drilling of an offsetting well to one of the leases in question and that in his opinion the resulting dry offset well completely condemned at least one of such leases. Appellant stated that he could have perpetuated the leases by payment of the $1.00 per acre delay rentals but that he declined to do so and his decision was made after securing geological advice from persons familiar with the area. Appellant testified that in his opinion the leases had a market value of less than $1.00 per acre at the time inquired about in special issue number 1. The witness Arthur M. Guida testi-

fied that he was a dealer in oil and gas properties in the area in which the leases in question are situated and that in his opinion leases in the general vicinity of the leases in question at the time inquired about had a market value of $1.00 per acre.

Appellant presents points of error contending that the court erred (1) in admitting testimony concerning the value of the overriding royalty interest created in the assignment of the leases from Ball to McLaughlin, (2) in admitting testimony concerning events and overriding royalty transactions which were unrelated to the leases here involved and to their value at the time of the alleged breach of contract, (3) in accepting the verdict of the jury and entering judgment for appellee because there was no evidence to support the verdict, (4) in accepting the verdict and entering judgment thereon because there is insufficient evidence to support the verdict and the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ We overrule appellant's points bearing on the lack, insufficiency and great preponderance of the evidence. Appellee's testimony stating the opinion that the leases had a value of $5.00 per acre at times material hereto was some evidence of such value. The record indicates in effect that appellant paid appellee 50¢ per acre for the leases plus a 1% overriding royalty. The leases, except one, were for ten year terms and there was evidence showing that they were in a "hot" area which was surrounded by three oil fields and that for several years there was always as many as four or five wells being drilled in the county. Appellee further testified that after appellant failed to reassign the leases he, appellee, soon thereafter sold less than a 1% overriding royalty in an adjoining tract for $15.00 per acre; that a short time thereafter a well was drilled about four and one-half miles from one of the leases in question. As heretofore noted

there was testimony by appellant and his expert witness concerning the value of the leases. Their testimony was contrary to and in conflict with that of appellee. Additional facts and circumstances were shown by appellant which were inconsistent with appellee's testimony concerning the value of the leases. This conflict presented a question of fact which the jury found in favor of appellee. The evidence was sufficient to support the verdict and the verdict was not against the great weight and preponderance of the evidence.

■ We are also of the opinion that there was no error, and certainly no reversible error, in the action of the court in admitting testimony concerning the value of the overriding royalty interest created in the assignments of the leases from appellee to appellant and the value of an overriding royalty interest in an adjoining tract. Appellee testified that in his assignment to appellant of the leases he reserved a 1% overriding royalty therein and that the value of such overriding royalty interest was considered by him in calculating the value of the leases. He also testified that he sold for $15.00 per acre less than 1% of an overriding royalty reserved by him under one of the leases here involved but covering land adjoining a portion of the property in question which had been assigned to a third party. It is true, as urged by appellant, that he had the absolute right to surrender the leases and was not liable for damages because of his failure to pay delay rentals. Appellant's liability was based, solely, on his inadvertent breach in failing to tender the leases in question back to appellee. He was not liable to appellee for the loss of the overriding royalty as such because even if the leases had been reassigned by appellant to appellee as contemplated in the assignments, the overriding royalty interest would have been dissolved. Appellant would then have owned no overriding royalty as such but would have owned the entire leasehold interest whch he had theretofore assigned to appellant. This is not to say, however, that evidence concerning the value of an overriding royalty interest in the leases or similarly situated property at times material was an improper consideration in determining the value of the leases. The overriding royalty interest of appellee was by the assignment to appellant retained and withheld from the leasehold interest. It reserved a portion of the production which otherwise belonged to the owner of the leases. The value of the leases was less because of the reservation. The value of the overriding royalty reserved was therefore a proper consideration in calculating the value of the leases.

■ An expert witness in forming an opinion as to the value of property may properly consider and testify to all relevant surroundings and circumstances which indicate or tend to increase or diminish the current market value of the property under consideration. An expert witness is permitted not only to state an opinion as to the value of the property but also to state facts upon which his opinion is based. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 201. Sales of similar property in the same locality constitute a basic fact for consideration by a witness in arriving at his opinion concerning the value of the property.

Appellant's points are overruled.

The judgment is affirmed.