**CHURCH OF THE NAZARENE et al., Appellants,**

v.

**COUNTY OF DALLAS, Appellee.**

**No. 4598.**

Court of Civil Appeals of Texas, Eastland.

March 9, 1973.

As Amended on Denial of Rehearing April 6, 1973.

chairman of the board's appraisal team. I am a qualified FHA fee appraiser. I have worked in all fields of appraising including commercial, residential and rural. My brokerage experience has been in the metropolitan area. I represent Reed Mortgage Company, Mid-State Mortgage Company and the Grand Prairie Urban Renewal Agency. I have recently done appraisals in Brenham, Whitesboro, Euless, Mesquite and Dallas. I have made approximately 2000 appraisals since I started in this work. I have also had experience as a builder and a developer. I am an associate member of the American Society of Appraisers. I have inspected the church's buildings and property. (He then describes in detail the subject property including the roads near the church and the neighborhood properties.) It is my opinion that the highest and best use of the subject property would be its present use, as a church.

Wright & Barber, William A. Barber, Grand Prairie, for appellants.

Fred M. Talkington, Asst. Dist. Atty., Dallas, for appellee.

WALTER, Justice.

In this condemnation case the Church of The Nazarene and others were awarded $2000.00 as full compensation incident to the condemnation of some of the church property. The church has appealed. The jury answered that the market value of the land taken was $2000.00. The testimony from the church's witnesses as to the decrease in the market value of the remaining property was excluded. Therefore, no issues were submitted as to the market value of the remainder before and after the taking.

The church contends the court erred in refusing to admit the testimony of its expert witness, Irven Klug. We agree. Klug testified substantially as follows:

I am a realtor and real estate appraiser. I have been in this business for twenty-one years. I have a Bachelor of Business degree from SMU. I am past president of the Grand Prairie Board of Realtors and

Klug testified the market value of the land taken was $2,962.50, the market value of the remainder before the taking was $108,813.50 and the market value of the remainder after the taking was $83,440.00. The court thereafter sustained Dallas County's objection and motion to strike, and instructed the jury not to consider any of Mr. Klug's testimony in regard to damages before and after the taking. The theory of the church was that by taking their property, the church lost a number of parking spaces. The church contended that the loss of the parking spaces restricted its crowds and therefore adversely affected its economic return. Dallas County requested the court to strike Klug's testimony regarding value before and after the taking because Klug took into consideration the economic return of some nonexisting parking spaces. At or about this time in the trial, the court recessed so that one of the lawyers could attend a funeral in Fort Worth. After the recess Klug took the stand and continued to testify. He was asked a proper question, relating to the value of the remainder after the taking, to which an objection was made to the effect

that an answer to a similar question had been stricken from the evidence by the court before the recess. Mr. Klug said that he was using two other approaches which are as follows:

"The first one being a ratio of loss of potential—of actual and potential parking area of the church's property compared to the City requirements for church parking, making an analysis of that and coming up with an opinion as to the damage factor by this ratio of loss of property * * *

The other approach which I considered and calculated before yesterday was how to replace this parking, or this potential parking, this land area."

Dallas County informed the court as follows:

"MR. TALKINGTON: I have no objection to your testimony up there as to the value of the whole property and the value of the part taken."

It is our opinion that the careful and learned trial court should have admitted the testimony of the witness Klug. With the admissible testimony of the witness Klug, the church would have been entitled to Issues #2 and #3 set forth in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (Tex. Com.App.1936).

"It is evident that from what is said in the Carpenter case and in others since that time such as City of Teague v. Stiles, 263 S.W.2d 623 (Tex.Civ.App.), (er. ref., n. r. e.); and Brazos River, etc. v. Costello, 169 S.W.2d 977 (Tex.Civ. App.) (er. ref., w. o. m.); Priolo v. City of Dallas (Tex.Civ.App.), 234 S.W.2d 1014, rev. other grnds., 150 Tex. 423, 242 S.W.2d 176, that the scope of the evidence under the ultimate issues of market value, is such that ANY EVIDENCE of any FACT which may reasonably affect value of the land taken or that remains, is proper to produce, including mineral damages.

* * * * * *

Churches, colleges and public institutions, although hard to sell, do have a market value, and in the trial of condemnation cases it has been observed, that a just result has been obtained in many cases involving the absolute taking of churches, and institutions, by the application of the Ultimate Issues of market value as enjoined by the Carpenter and Cannizzo cases, but aided by the devise, of allowing the introduction of evidence as to what *it would cost to replace the buildings and improvements,* less its present depreciation, and substitute a similar property, or substitute the value in money, of a fair equivalent of the subject real estate, to those who desired it on the market, and were willing to buy it under the hypothetical doctrine of the ultimate issue being its HYPOTHETICAL MARKET VALUE in the last analysis." Texas Law of Condemnation by Rayburn, Section 93, page 332.

In Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151 (1950), the Court said:

"As stated in the elaborate opinion in State v. Carpenter, 126 Tex. 604, 89 S. W.2d 194, the issue of depreciated market value, which is the ultimate one in such cases, is largely a matter of opinion evidence, and a very wide range of factors may be legitimately taken into consideration by qualified witnesses as the foundation for their opinions. It may well be, as argued, that if the opinions should be shown to be based exclusively upon considerations of remote, fanciful or otherwise incompetent character, they would have to be disregarded, but, all opinion being at best something of a speculation, it does not cease to have probative force when impropriety attaches only to some, rather than all, of its underlying reasons. The question of market value is thus peculiarly one for the fact finding body, subject to the control of the court in the manner indicated in the Carpenter case, as well as through the powers of the trial court and Court

of Civil Appeals with respect to verdicts properly classed as excessive. Of the various and evidently qualified witnesses who testified in this case to a substantial depreciation in market value we cannot say that every reason given in support of these opinions was invalid at law so as to render all the testimony a nullity."

The judgment is reversed and the cause is remanded.