## TENNESSEE GAS TRANSMISSION COMPANY V. HENRIETTA NILSON ET AL.

No. A-3579. Decided October 1, 1952.
Rehearing overruled October 29, 1952.
(251 S. W., 2d Series, 503.)

*William R. Brown, Charles C. Ingram, Jr., George P. Willis, W. V. Ballew, Jr., Ingram & Moore, Baker Botts, Andrews & Parish,* all of Houston, for petitioner.

The majority of the Court of Civil Appeal erred in holding there was evidence supporting the jury's answers by which an award of $22,716 was made for supposed damage to the remainder of respondent's property. Henry v. Phillips, 105 Texas 459, 151 S.W. 533; Southern Pac. Ry. Co. v. Maddox, 75 Texas 300, 12 S.W. 815; Texas Co. v. Lee, 138 Texas 167, 157 S.W. 2d 628.

*J. J. Duckett,* of El Campo, *Hill, Kronzer & Abraham* and *W. James Kronzer,* all of Houston, for respondents.

In reply to petitioner's point, cite Boddeker v. Olschewske, 127 Texas 598, 94 S.W. 2d 730; Dallas Ry. & Ter. Co. v. Farnsworth, 148 Texas 584, 227 S.W. 2d 1017; State v. Carpenter, 126 Texas, 604, 89 S.W. 2d 194.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The petitioner, Tennessee Gas Transmission Company, condemned an easement for gas pipe line purposes on a straight strip of land thirty feet wide, 2894 feet long and 1.99 acres in area out of, and more or less bisecting, a tract of 229.15 acres of the respondents Nilson located about ½ mile from the City of El Campo in Wharton County. The judgment of the county court awarding respondents the total sum of $23,213.50 in respect of the "taking" of the strip itself and consequential damages to the approximately 227 remaining acres of the tract was appealed by the condemnor and affirmed by the Galveston Court of Civil Appeals over the dissent of the Chief Justice. 245 S.W. 2d 727. We granted error on the point that the verdict and judgment as to consequential damages had no support in the evidence and, following oral argument and further consideration of the case, have definitely concluded the point to be well taken.

The following rough sketch of the tract and related details, including presence of an already existing gas pipe line easement of Houston Pipe Line Co., may facilitate an understanding of the issues.

Legend: Line T-G—Easement in Suit (30'x2894'—1.99 acres)
Line H-P—Houston Pipe Line Co. Line (1926)

The Houston Pipe Line Co. easement dates from 1926 and evidently differs little in nature from that condemned by petitioner, though the length of the former within the tract seems to be about ½ that of the latter.

The respondent—condemnees admitted the legality of the condemnation and assumed the affirmative on the damage issues. As to consequential damages, they pleaded "- - - that the reasonable market value of the eighty (80) acres of land suitable for residential homesites immediately prior to the taking of the easement was approximately three hundred fifty ($350.00) dollars to four hundred fifty ($450.00) dollars per acre, and that the reasonable market value of the same eighty (80) acres of land immediately after the taking of the easement dropped to approximately one hundred ($100.00) dollars to one hundred fifty ($150.00) dollars per acre." The location of this 80 acres within the larger tract or otherwise was not specified, although the original pleading of the petitioner-condemnor, and also the award of the commissioners, made no mention of any 80 acres and referred only to the tract of 229.15 acres, of which the respondents must have meant that the 80 acres was a part or parts. The only fact issues were those of damages, which were submitted according to the measure and form stated in State v. Carpenter, 126 Texas 604, 89 S.W. 2d 194. The resultant findings as to the 227 acres exclusive of the strip, were (a) value before taking, $300 per acre; (b) value after taking, $200 per acre; or a total consequential damage figure of $22,700 ($100 X 227).

The only testimony for the petitioner-condemnor on consequential damages was that of its expert, Owen, who gave "before and after" figures of $100 and $95 respectively or a total figure of $1,135 ($5 X 227).

Respondent produced several actual or purported expert witnesses. Subject to the important qualifications hereinafter mentioned, each of them stated, with greater or less competence, that the "before" value of the 227 acre tract was $500 per acre —a figure based on its suitability for residential subdivision purposes, which was several times its value for any other purpose. None of them gave an opinion of the "after" value except that, in accordance with the allegations of respondents' pleading, one or more of them did say in effect that "80 acres" were reduced in per-acre value from $500 to $150. In this manner, the respondents claim to have produced evidence of a loss of $350 per acre from 80 acres ($28,000). And they say that when this evidence comes to be applied to the jury issues, which (following the Carpenter case) were in terms, not of 80 acres, but of the whole 227 acre tract, the jury might properly take the $28,000 loss figure (or in its good judgment a lesser figure) testified to in respect of the 80 acres and, dividing it by 227, prorate the loss over the entire tract per acre so as properly to return the answers it did, that is, answers constituting total consequential damages of $22,700, stated in terms of $300 per acre value before taking and $200 per acre after, for 227 acres.

There is, doubtless, no serious obstacle to submitting the issues in "per acre" terms rather than terms of a total money figure, though the word "average" ought to be included to avoid misunderstandings, and obviously a definite total sum is required in the judgment. It is only a matter of multiplication to convert the one into the other. Doubtless, too, the "before and after" values found in respect of an entire tract may properly be based on testimony that discloses an actual diminution of value restricted to a few acres within that tract, though the question of counterbalancing the value decrease of the part by a possible value increase of the remainder naturally also enters into the picture. In other words, there is, generally speaking, no reason why a loss of "X" dollars in respect of a mere part of an entire tract may not be a loss of the same amount in respect of the entire tract and therefore be properly stated in terms of the latter.

But the difficulty in the present case is that the testimony

we have indicated above was only part of the testimony of the same witnesses. All of the proof intended to support the verdict as to consequential damages is qualified by other factors—especially that concerning the pre-existing easement of Houston Pipe Line Company over the same 227 acre tract. The respondents' witnesses actually, and quite clearly, restricted their conclusion of diminished value to an area of 1000 feet on each side of the easement condemned by petitioner, though they also spoke of the same area in terms of about 80 acres. Their unanimous and only reason for this diminution was the reluctance of people to build homes within less than 1000 feet of a gas pipe line, which conceivably might explode. And, as before indicated, the whole case of respondents was pitched on this theory. More importantly, the witnesses in question were, not unnaturally, just as clear that the land for 1000 feet on each side of the existing Houston Pipe Line Company easement had been already, and for the same reasons, lessened in value to where, even though the instant easement had never been condemned, it was worth only $150 per acre. In other words, as to the "before-taking" value, the testimony was that the 227 acre tract was worth $500 per acre, *except* as to the part lying within 1000 feet of the existing Houston Pipe Line Company easement, which part was worth only $150 per acre, the total value of the 227 acre tract in terms of one sum of money (or equivalent terms) thus depending on how much of it was within 1000 feet of the old pipe line (and thus worth only $150 per acre) and how much was beyond 1000 feet (and thus worth $500 per acre). This vital information was somehow never supplied, so that in fact the only testimony from which a value of the 227 acres could be computed was that of the petitioner's witness, Owen, whose "before-taking" valuation of $100 per acre for the entire 227 acre tract was unqualified. As to the "after taking" value, the same deficiency exists. Since an unknown number of acres of the tract (those within 1000 feet of the old easement) was worth $150 per acre after (as well as before) the "taking" of the instant easement, and another unknown number was worth $500 per acre (at all times) it is impossible to determine the total value of the 227 acre tract after the taking in terms of a single sum of money (or equivalent terms) even though we might know that a definite number of acres (80) forming some part of the total did have a value of $150 per acre after the condemnation. "X" acres at $150 per acre, plus "Y" acres at $500 per acre, plus 80 acres at $150 per acre, gives no total value for 227 acres, unless we know the number of acres corresponding either to "X" or "Y". Yet the fact issues as sub-

mitted (and correctly submitted under the Carpenter case) call for a determination—upon evidence in accord therewith—that the 227 acre tract had a definite total money value (stated either in dollars alone or dollars per acre) before the taking and a corresponding one thereafter. The words of the verdict themselves do indeed state such values. But the evidence, as above demonstrated, does not permit of any such definite sums, because, by the evidence, areas of undetermined acreage within the tract have different per acre values respectively. If the land near the old pipe line were 50 acres, the total value of the full tract would be one figure. If the same land were 75 or 100 acres, the value of the full tract would be quite different. If the testimony had been merely, "The 'before' value of the entire tract was $500 per acre because of its value for residential subdivision purposes, but after the condemnation 80 acres of it were worth only $150 per acre, having lost their residential value," we might conceivably uphold the verdict. The same would be true were the testimony in so many words, "considering the value, which the whole tract would otherwise have for residential subdivision purposes, and considering also the adverse effect for such purposes of both the old and the new pipe lines, the 'before' value of the entire tract was an amount equivalent to $300 per acre and the 'after' value the equivalent of $200 per acre." But such was not the testimony. The latter, despite its length, simply affords no evidence on which the jury could find particular "before" and "after" values for the whole tract, except those of $100 per acre and $95 per acre testified to by petitioner's witness Owen.

As to the latter we do not see how it can be taken to alter the effect of the other testimony so that both together would constitute evidence supporting the verdict. The jury could, no doubt, have properly found just as Owen testified. It could not, however, take part of what he said and make it part of what the other witnesses said. If respondents' witnesses had testified in so many words that "some of the 227 acres were worth $500 before and $500 after, and the remainder worth $500 before and $150 after, but we have no idea how much in either instance", surely it would not be contended that the jury, by considering this together with Owen's testimony, could validly find that all of the 227 acres were worth $300 before and $200 after. Yet this is substantially no different from the situation before us.

Nor can it be said that the reference to 1000 feet on each

side of the old pipe line was definite rather than indefinite, because the corresponding acreage could be calculated, and the proof was thus equivalent to certain dollar values for a certain number of acres and a certain other dollar value for the remainder of the 227 acres. Even if such calculation were a matter of judicial knowledge, it is noteworthy that as yet respondents have not attempted to demonstrate the respective amounts of acreage of the different values which would thereby be produced. Considering the irregularity of the areas, which would thus have to be computed (as is evident from the above sketch) we think the computation, or at least an estimate, should have been made before the jury by qualified witnesses, and this, of course, was not done.

The testimony is not susceptible of the interpretation that the witnesses had themselves, on the basis of some undisclosed data and process, already made the calculation or estimate and produced therefrom a conclusion that the 227 acres, as a whole, had a definite "before" value averaging $500 per acre ($113,500 total) including allowance for the lower ($150 per acre) value of the part near the old pipe line, and a correspondingly definite "after" value. None of them were engineers or gave any other indication of being able to make, or of having made, such a calculation. The vague mention of an 80 acres along the petitioner's line is far from a statement that it had been made. It does not appear whether this 80 acres is meant to include or exclude part or all of the 1000 feet area along the old line, which was worth $150 per acre both before and after the instant condemnation and obviously overlapped much of the land adjoining petitioner's line on each side of the latter.

As remarked by counsel for petitioner, the matter is more one of mathematics than authority. None of the decisions cited appears to bear closely on it, including Gulf, C. & S.F. Ry. Co. v. Necco, Tex. Sup. 15 S.W. 1102, id. Tex. Sup. 18 S.W. 564, and Owens v. Navarro County Levee Imp. Dist. No. 8, 115 Texas 263, 280 S.W. 532, relied on by respondents. As related to the instant case, these decisions may, indeed, stand for the proposition that in a suit by a landowner for damages to his land as a result of use made by the defendant of the defendant's land, in which the harmful results of the latter use are accompanied by similar damage not chargeable to the defendant, the courts will not require the impossible in the way of evidence showing an "exact" proration of the total damage as between the two sources. The rule in such cases, as stated by this court in commenting on the

Owens decision, is to require only that degree of proof, of which the situation is reasonably susceptible, though even this statement itself includes a proviso requiring evidence from which "the amount of damages caused by the defendant can be inferred or estimated by the jury with reasonable certainty." State v. Schlick, 142 Texas 410, 416, 179 S.W. 2d 246, 249. In both the Necco and Owens cases, anything more than a rough proration of the damage was obviously quite difficult, and no doubt the testimony for the plaintiff, indicating "in a general way" the portion chargeable to the defendant, was adequate. No doubt, too, there would be some analogy with the present case (though one of condemnation) if the 229.15 acre tract were crossed by many pipe lines when the petitioner came to add yet another. But here we have only one pre-existing line, and respondents' witnesses evidently had in mind a rather definite, simple—and not unimpressive—theory for a proper determination of the damages attributable solely to the new line, that is, for a proper determination of the difference in the market values of the tract before and after the "taking". This latter enquiry was clearly the proper one under State v. Carpenter, supra, and there was no reason for petitioner to question it, except insofar as the corresponding findings might not be supported by evidence. The trouble is that the witnesses simply did not proceed to apply their theory of valuation to the facts as far as readily might and should have been done either by them or others. They did not say, even "in a general way" what the "before and after" market values of the tract were. They did not even say, "The tract was damaged by the new line to the extent of a reduction in value of $350 (or thereabouts) per acre, for 80 acres (or thereabouts)." They said only, "But for the two pipe lines, the tract would have an average per acre value of $500. Pipe lines destroy such value by $350 per acre, or 70%, as to acreage within 1000 feet of them." Clearly respondents could and should have produced evidence carrying this method of valuation one step further, so as to indicate the loss attributable to the petitioner's line.

The above views render it unnecessary for us to consider the other phases of petitioner's contention of "no evidence" which have been presented. They also require that both judgments below be reversed. As petitioner properly concedes, the additional order should be that of remand for a new trial. Conceivably we might proceed to consider and overrule petitioner's other points of error, which are not restricted in their effect to the single issue of consequential damages, and might thus affirm the judgments on the issue of value of the easement

itself. However, since neither side has expressed a view anticipating this contingency, and the financial importance of the last mentioned issue is relatively insignificant, while there are also possible advantages of greater clarity in re-trying both, we have concluded to remand the entire case for a new trial. It is so ordered.

Opinion delivered October 1, 1952.

Rehearing overruled October 29, 1952.