**TENNESSEE GAS TRANSMISSION COMPANY, Appellant,**

v.

**H. R. DISHMAN et al., Appellees.**

No. 6107.

Court of Civil Appeals of Texas.

Beaumont.

May 2, 1957.

Rehearing Denied June 19, 1957.

472

Marcus, Weller & Evans, Beaumont, Baker, Botts, Andrews & Shepherd, Houston, for appellant.

W. O. Bowers, Jr., James McNicholas, Beaumont, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the County Court of Jefferson County at Law, in a condemnation suit.

It was stipulated by the parties that appellant had the right to exercise the power of eminent domain, and that it had taken all the prerequisite steps necessary to the jurisdiction of the trial court to condemn an easement 66 feet wide and 8,623 feet long for a pipe line across appellees' land.

Judgment was rendered on the verdict of the jury, awarding to appellees $2,659 for the value of the 13.295 acres actually taken and further awarding appellees $14,519.69 as damages to the remaining 1161.575 acres of their tract of land crossed by the pipe line of appellant.

The appellant has duly perfected its appeal from such judgment.

Appellant advances 53 points of error, a majority of which are based upon the appellant's contention that the amount of the award is excessive and that the evidence is not sufficient to support the verdict of the jury. Complaint is also made

of the trial court's rulings on the introduction of evidence and the court's refusal to grant appellant's motions to strike testimony. The contention that the evidence was insufficient is presented also in objections to the court's charge and the submission of special issues inquiring as to the market value of the lands before and after the taking of the easement. Complaint is also made of argument of counsel for appellees.

Appellees were the owners of the surface of two adjoining tracts of land, a 362 acre tract and a 812.87 acre tract near China, in Jefferson County. The pipe line easement 66 feet wide and 8,623 feet long ran on a line in a Southeast-Northwest direction, which line was not parallel to either the north or south lines of the tract. The Commissioners made an award of $2,650 to the appellees for the value of the easement and right of way actually taken and awarded damages to the remainder of the tract in the sum of $6,866.60.

On the trial, the court submitted four Special Issues to the jury. Special Issue No. 1 inquired what was the reasonable market value per acre of the surface estate of the 13.295 acres of land before the taking of the easement and the construction of the pipe line. This issue the jury answered "$250 per acre".

Special Issue No. 2 inquired what was the reasonable market value per acre of the surface estate of this same strip of land immediately after the taking of the easement and construction of the pipe line. This issue the jury answered "$50 per acre".

Special Issue No. 3 inquired what was the reasonable market value per acre of the remaining acres of the Dishman tracts of land, exclusive of the strip taken, immediately before the condemnation of said strip and the construction of the pipe line. This issue the jury answered "$250 per acre".

Special Issue No. 4 inquired what was the reasonable market value per acre of the said remaining acres of the Dishman tracts of land not taken by the easement, immediately after condemnation of the strip and the construction of the pipe line. This issue the jury answered "$237.50 per acre".

The appellant filed its motion for an instructed verdict at the close of the evidence in behalf of the appellees and also a similar motion at the conclusion of all the evidence. Appellant also filed a motion for judgment non obstante veredicto. All such motions were overruled, and a motion for new trial was filed and was overruled by the court.

Appellant's points Nos. 1 through 8 present the contention of the appellant that the evidence was insufficient to show any reduction in value of the lands of the appellees outside of and exclusive of the strip of land actually taken and used for laying the pipe line; that its motions for instructed verdict and for judgment should have been granted. Under this point it argues that the appellees failed to discharge the burden of proof upon them to show that the remainder of the lands in the tracts were decreased in market value by the laying of the pipe line, and says that the undisputed evidence showed that a considerable portion of such lands were of the same market value after the construction of the pipe line as before such construction. Under these points it contends that the evidence produced by appellees by the testimony of certain witnesses should not be considered, since it was improperly admitted and should have been stricken. It says that the undisputed evidence showed that the entire acreage owned by the appellees adjacent to the pipe line was not reduced in market value and appellees failed to prove the exact acreage which they claim was reduced in market value, and how much such market value was reduced as to those certain acres. It says that the undisputed evidence fails to establish that the entire

acreage outside of the strip itself was reduced in market value, but on the contrary established that none of said acreage suffered any consequential damage; they say that at best some acreage suffered a decrease but the entire acreage did not. These contentions require a summary of the evidence in support of the jury's verdict.

Appellees purchased the surface of the lands in question in April, 1952, paying a price of $65 per acre. Since that time they have expended some $30 to $50 per acre in improving the lands. The lands include about 650 acres of rice land and 75 to 100 acres of timber land. A large drainage ditch runs the entire length of the land, running in a north-south direction.

Appellees' witness William Doornbos testified that he was engaged in farming, cattle, investments, and real estate business and had been so engaged for twenty-five or thirty years in Jefferson County; that he was familiar with the price of real estate in Jefferson County, had handled all kinds · of real estate, bought and sold farm lands and other lands, and kept abreast of current land prices, had been consulted with respect to the appraisal of lands for federal and state inheritance tax purposes; that the biggest portion of his income was derived from handling real estate.

He testified that he was familiar with the subject two tracts of land owned by appellees Dishman; that by reason of going on the land and investigating the price of land in the area and study of sales in the area he had an opinion of the value per acre immediately before September 8, 1955, the date of the taking of the condemned strip; that along the road for half a mile back the land was worth $400 or $500 per acre and the area more that half a mile back $175 per acre; that the $250 to $300 figure was an average or mean of the entire acreage.

He testified that the value of the condemned strip for the gas pipe line was cut down to $50 to $60 per acre and that the two entire tracts exclusive of such strip had been damaged 10 or 15 percent per acre by the angle at which the strip crosses the tracts.

Appellees' witness J. D. Lyons, a licensed real estate broker and land appraiser for 14 years, testified that he was familiar with the market value of rice land and other lands in Jefferson County; that he had made quite a few land deals in the area of the Dishman land and had bought and sold properties of the same or similar characteristics, type and potential uses. He said that the high land is worth $500 or $600 an acre, and put an appraisal on the whole tract that would be $300 an acre, overall, taking in the low land and all. He testified that the pipe line affected the land $30 per acre, 10 percent damages or $30 per acre.

Appellant's witness Phil V. Hall testified that appellees' witness J. D. Lyons was an able real estate man and specialized in the sale of farms, farm lands.

Appellees' witness Lawrence Benoit testified that he had lived in the town of China since 1942, was a rice farmer, had a store, engaged in the real estate business, was acquainted with the Dishman land, was familiar generally with the values of lands like the Dishman land in the area of China, in 1954 had bought a tract of 12 acres of land about 1200 feet from the South line of the Dishman tract and of the same type for $18,000 that had a house on it worth $4,000, which tract he had subdivided for residential improvements into 60 lots and had sold 25 or 30; that there were some 25 or 30 homes along the North China Road, across from the Dishman tract which was suitable for subdivision purposes, and he valued the Dishman frontage on the road at $300 per acre and the open land at $100 per acre. He was president of the school board and approved the valuations of these various

tracts of land within the China School District. He said that he could not give an estimate of the value of the Dishman tract immediately after the pipe line was laid.

The jury found the value of the land before the condemnation to be $250 per acre for the entire tract, which was Mr. Doornbos's lowest value and $50 less than Mr. Lyons' value, and found the value of the remaining land, exclusive of the condemnation strip, to have been reduced $12.-50 per acre for the entire tract, which was half of the damage according to Mr. Doornbos and less than half of $30 per acre damage testified to by Mr. Lyons, but both of them testified that the value of such remaining land was reduced or damaged 10 percent by the gas pipe line right of way.

Floyd Smith, a rice farmer and rancher, living at LaBelle in Jefferson County, testified that he was acquainted with the Dishman land, had been over most of the farm and described the condition of the tract where the pipe line had been laid. He said you could see where they brought up clay and the soil had been mixed; there was quite a bit of clay on the top of the ground, looked like it might be 10 or 12 feet wide and 8 or 12 inches high. He testified that he had seen other lands with pipe lines over them and never saw where it aided the land any. He said that laying a pipe line interfered in several ways with the use of the rest of the land and described the ways in which it interfered with growing crops on the land. While he stated he did not know the market value of the land, in his opinion the land would be less valuable after the laying of the pipe line.

The appellant introduced two expert witnesses, Jack Langston and Phil V. Hall, both of whom qualified as experts in regard to market value of lands in Jefferson County, and particularly the land in suit. They testified that the land had a reasonable market value of $175 per acre and that the land other than that taken by the easement itself did not suffer any reduction in market value because of the construction of the pipe line across the strip taken.

Appellant says that the case of Tennessee Gas Transmission Co. v. Nilson, 151 Tex. 446, 251 S.W.2d 503, 505, by the Supreme Court, states the law of this case and argues that under the holdings in that case the verdict and judgment as to consequential damages had no support in the evidence. We have studied this case in the light of the appellant's contentions and do not agree that the holdings in that case make it necessary that this judgment be reversed because of the insufficiency of the evidence. In the Nilson case, we note that the deficiency in the evidence pointed out by Justice Garwood centered around the fact that the Nilson tract across which the pipe line of Tennessee Gas Transmission Company was laid also had a pipe line of the Houston Pipe Line Company running across the Southeast corner of the tract and crossing the pipe line of Tennessee Gas Transmission Company almost at right angles; that the testimony of the witnesses as to the "before taking" value was that the tract was worth $500 per acre, except as to the part lying within 1,000 feet of the existing Houston Pipe Line Company easement; that the total value of the tract in suit depended on how much of it was within 1,000 feet of the old pipe line. The opinion points out that the testimony in that case was not susceptible of the interpretation that the witnesses had themselves made a calculation, from some undisclosed data and process, that the tract as a whole had a definite "before value" and a corresponding definite "after value". In no way can we make the same deduction as appellant does that this case is authority for the contention of the appellant that the burden was upon the appellees to show by proof an actual depreciation in value of all the various portions of the two tracts of land owned by the Dishmans. In the Tennessee Gas Transmission Co. v. Nilson case, supra, the opinion also states:

"There is, doubtless, no serious obstacle to submitting the issues in 'per acre' terms

rather than terms of a total money figure, though the word 'average' ought to be included to avoid misunderstandings, and obviously a definite total sum is required in the judgment. It is only a matter of multiplication to convert the one into the other. Doubtless, too, the 'before and after' values found in respect of an entire tract may properly be based on testimony that discloses an actual diminution of value restricted to a few acres within that tract, though the question of counterbalancing the value decrease of the part by a possible value increase of the remainder naturally also enters into the picture. In other words, there is, generally speaking, no reason why a loss of 'X' dollars in respect of a mere part of an entire tract may not be a loss of the same amount in respect of the entire tract and therefore be properly stated in terms of the latter."

■ We think the jury's verdict here is supported by the evidence. All of the witnesses, both for appellant and appellees, who testified to the value of the entire tract, stated their opinions on a per acre basis. Appellant's witnesses so testified to the "before and after" values in respect to the entire tract. Appellees' witnesses William Doornbos and J. D. Lyons testified that the entire remainder of the tract, excluding the easement strip, was damaged to the extent of ten percent of its value before the taking of said strip. They testified to such damage in respect to the remaining tract as a whole, and gave the reasons and facts on which this opinion was based.

Appellant's Points 1 to 8, inclusive, are overruled.

Appellant's next group of points 9 to 25, inclusive, complain of the court's actions in admitting testimony of the witnesses Floyd Smith, Lawrence Benoit and George A. Dishman and later overruling motions to strike such testimony.

■ In considering these points, we have read all of the testimony of these three witnesses in the statement of facts in connection with complaints of the appellant regarding such testimony, and we are satisfied that the court did not err in admitting the evidence or in refusing to strike such evidence. Appellant says that the witness Floyd Smith was not qualified as a witness on the market value of the land before or after the construction of the pipe line and, therefore, his opinion would be immaterial and irrelevant to any issue in the case; that his testimony to the effect that the construction of the pipe line over the appellees' land reduced the market value of the land and damaged the land was not admissible in evidence, because he was not qualified to testify relative to the market value of the land; that the witness' testimony about the difficulties in using tractors on the land after the pipe line was constructed was only a conclusion of the witness and inadmissible relative to the market value of the land. We cannot agree with the contention of the appellant. It says that the case of Sample v. Tennessee Gas Transmission Co., 151 Tex. 401, 251 S.W.2d 221, is authority for its contention that since Smith did not know the market value of the land, any testimony by him about the condition of the land, its use and suitability for other uses, and the practical result upon farming adjacent lands of the pipe line so constructed, all would be inadmissible. If Smith's testimony was the only evidence introduced on behalf of the appellees, it might well be said that the evidence would be insufficient, because the testimony did not include anything regarding the market value of the land before or after taking. As we view the entire record of the evidence, Smith and other witnesses testified as to some features of the lands, and other witnesses testified as to other features of the lands and the manner in which they were damaged by the construction of the pipe line. Still other witnesses testified as experts as to the market value of the lands before and after the construction of the pipe line. Smith did not testify or attempt to testify regarding the market val-

ue of the lands. This situation presents a question different from that decided in Sample v. Tennessee Gas Transmission Co., supra, in which the court held that the trial court correctly excluded testimony of a witness that a pipe line across his land, used for grazing purposes, did not make much difference. In the Sample case the court also held it was not error to exclude the testimony of a witness that he had not heard of the building of a pipe line interfering with the operation of a farm or ranch through which it was built. In the instant case Smith described what he saw and knew about the pipe line on the land, and told how the land was affected.

■ See State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 199, 979, in which the court stated the following rule as to admissibility of evidence in a condemnation suit:

"In arriving at this second item of damage, the parties would have the right to introduce evidence of everything that would tend to affect the value of the land, in the estimation of a proposed purchaser, or that would tend to make it more or less valuable to the present owner, such as the shape in which the tract will be left; the increased amount of fencing, if any, that will be required; the increased expenditures made necessary to provide water; the added facilities, if any, provided for travel to the owner of the land."

The court also held as follows:

"Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value. Evidence should be excluded relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property. See

Worsham v. [Gainesville, H. & W.] Ry. Co., 3 Willson, Civ.Cas.Ct.App. § 425.

■ "Elliott on Roads and Streets, § 291, vol. 1, makes the following helpful comment upon the question of evidence as to market value: 'Witnesses acquainted with the market value of the land seized may state their opinion of its value. It is essential that some acquaintance with the value of the land in the market should be shown, but it is not material how the knowledge was obtained. The weight of the witness's opinion will in a great measure depend upon the acquaintance which he is shown to possess with the subject of values, and the facts which he gives as constituting the foundation of his opinion. It seems to us the better rule, although there is a sharp conflict in the authorities, that it is not competent to ask a witness how much damage a party has sustained, since this would be to put the witness in the place of the jury. It is, however, according to the weight of authority, competent to ask a witness, qualified to testify upon the subject, the value of the land before the way is opened and what its value will be after the way is constructed. This does not invade the province of the jury, because it simply asks for the opinion of the witness as to values and not as to damages. It is difficult to perceive how any other rule than that stated can be maintained on principle. No matter how minutely lands and their surroundings may be described, a jury, unless possessing peculiar knowledge of the matter in controversy, can not, without the judgment of persons acquainted with values, justly determine the injury or benefit which accrues to the landowner by the opening of a highway or the construction of a ditch. The object of evidence is to place before a jury all the facts essential to a just decision of the merits of the legal controversy, so that the rights of the contestants may be justly determined, and this object is defeated unless testimony as to the value of the land with and without the highway is allowed to be introduced. Without

some guide of this character the verdict must be the product of conjecture rather than a conclusion from proved facts.' "

■ The appellant contends that the testimony of the witness Lawrence Benoit was inadmissible and should have been stricken. He testified that the Dishman tract was across the street from his home and that he was familiar, generally, with the values of land like the Dishman land in that area; that he had bought a tract of 12 acres near the south line of the Dishman tract, had priced other lands and had tried to buy others, and as President of the China School Board, was acquainted with the values and had approved values of various tracts for school tax purposes in that area. He knew of sales of several tracts in that area and testified that the Dishman land for 1,000 feet fronting on the North China Road was worth $300 per acre and the rest of it was worth $200 per acre, all such values being as of the time before the pipe line was constructed. He also testified that all of the Dishman land was suitable for subdivision and that it was the highest piece of ground in Jefferson County.

Although he testified as to his opinion as to the value of the land "before taking", he declined to give any estimate as to the value of the land "after the taking." On his voir dire Benoit testified that his opinion as to values of the lands was influenced by an appraisal of the lands made for the School Board, of which he was President, but that this appraisal was not the primary basis of his opinion. Appellant says that Benoit's opinion as evidence in regard to market value of the land before taking should be stricken for these reasons. We do not agree. The matters which the appellant urges as grounds for striking the testimony of Benoit are arguments against the strength and value of his opinion, which could be considered by the jury, and do not affect the admissibility of the testimony.

As stated by the court in State v. Carpenter, supra, quoting from Elliott on Roads and Streets, paragraph 291, Vol. 1, "Witnesses acquainted with the market value of the land seized may state their opinion of its value. It is essential that some acquaintance with the value of the land in the market should be shown, but it is not material how the knowledge was obtained."

■ The appellant says that the testimony of the witness George A. Dishman, one of the appellees, was improperly admitted and should have been stricken. Dishman testified that the lands outside of the strip actually taken for the construction of the pipe line were damaged. Appellant objected to his testimony on the ground that he was not qualified to testify as to the market value of the land either before or after the taking, and therefore he was not competent to testify that the lands outside of the easement were damaged. Appellant's Point 24 concisely states its position on this question. It is as follows:

"The court erred in admitting the testimony of the witness, Geo. A. Dishman, over the objection of the appellant, said testimony and objection being as follows:

" 'Q. Now, Mr. Dishman, would you tell this jury just what the placing of that pipe line, almost diagonally across the larger tract of your land, and cutting off almost at right angles on the small tract, in Section 101, how that affects the use of that land, for farming purposes?

" 'Mr. Weller. I object to that. It hasn't been shown the witness is qualified in regard to market value, and such would not be evidence of market value.

" 'Q. Would you tell me how it affects the use and adaptability of the land, insofar as it affects rice farming? A. It definitely restricts our use of the property, obstructs our drainage, and they have the right of ingress and egress at all times.

" 'Q. All right, sir. Based upon your many years experience in rice farming, and the many years you have been a rice farmer in this particular area, Mr. Dishman, do you have an opinion as to whether or not the land in question has been damaged, as a result of this pipe line easement going across—and wait until the objection is made.

" '*Mr. Weller.* I object to that question for the reason that the witness has not been qualified to testify in regard to the market value of the land before, and has not stated any opinion in regard to the market value of the land before the construction of the pipe line or the taking of the easement, and is not qualified to testify to market value of the land in question after, and therefore, his opinion as to damage would call for a conclusion, and would not be admissible, and the witness has failed to qualify as to testifying or showing that he is competent to testify to the market value of the land. I make the second objection to that question, for the reason that the private opinions or conclusions or preferences of the witness as to the effect of the pipe line, or his desire to purchase, and its interference with the use of the land is not admissible, relative to the market value of the land involved, and would therefore not be material to any issue in this case.

" '*The Court.* Overruled.

" 'Q. You may answer. A. What was the question?

" 'Q. Whether or not you have an opinion? A. Yes. I definitely have an opinion. We keep very well informed as to the value of property surrounding ours.

" 'Q. All right, sir. Do you have an opinion as to whether or not the land in question has been damaged, as a result of the pipe line easement?

" '*Mr. Weller.* May my objection go to all this testimony?

" '*The Court.* Yes, sir. Same objection; same ruling.

" 'Q. What is your opinion? A. I think—

" '*The Court.* Just ask if he has been damaged in dollars and cents? A. Sir?

" '*The Court.* Have you been damaged in dollars and cents? A. We have been damaged.

" '*Mr. Weller.* I have the same objection to this question—the whole series of questions.

" '*The Court.* Yes.' "

This contention is overruled. We are unable to agree with the appellant that one of the appellees, the one who was in charge of the rice farming on the land involved, should not be permitted to testify as to facts within his own knowledge which could show the manner in which the construction of the pipe line would interfere with the use of the land. That he would not testify as to the market value of the land does not make such testimony as he gave inadmissible. Such testimony was admissible to show the reasons why and the manner in which the depreciation in value followed as a result of the construction of the pipe line.

We think no error is shown by these points which complain of the testimony of the witnesses Smith, Benoit and Dishman.

■ The appellant's Points Nos. 26, 27, 28, 31, 32, 33, 34, 35, 36, 37, 38, 39 and 40, present objections to the submission to Special Issues Nos. 3 and 4, inquiring as to the market value of the Dishman lands, other than the strip actually taken, before and after the taking. Under these points the appellant stresses the arguments made under the preceding two groups of points, arguing (1) that the testimony of the witnesses Smith, Benoit and Dishman was

improperly received and should have been stricken and cannot be considered, and (2) without such evidence in the record there was no evidence or insufficient evidence to warrant the submission of such issues. As indicated above, we do not agree with either of these propositions, believing that the testimony of the witnesses was properly admitted and that the evidence was sufficient to support the verdict of the jury. It necessarily follows that we hold that the evidence was sufficient to require the submission to the jury of the special issues inquiring as to the market value of the lands before and after the taking.

 Under these points the appellant also argues that the wording of the special issues was defective in that the issues assumed that each and every acre is of the same market value, whereas the undisputed evidence is that a part has a higher market value than the other, "but the jury would be required to find each acre the same." The appellant also argues that by the wording of the issues, the jury was compelled to find a reduction in market value of the entire 1164 acres, whereas the undisputed evidence, viewed most favorably to the appellees, shows that certain large portions of the lands outside the easement were not reduced in market value.

Special Issues Nos. 3 and 4 are set out above in this opinion. The wording of the issues conforms in a general way to the suggestions for submission of such special issues found in State v. Carpenter, supra. Since there was testimony in the record regarding the "before taking" and "after taking" values of different portions of the Dishman lands, and since there was also testimony that the tracts of land had an overall value, both before and after taking, it was not error to submit the issues inquiring of the jury the market value of the lands per acre. As was noted by Justice Garwood, in his opinion in Tennessee Gas Transmission Co. v. Nilson, supra, there is no serious obstacle to submitting the issues

in "per acre" terms rather than terms of a total money figure, but the word "average" ought to be included to avoid misunderstandings. The word "average" was not included here but that does not affect the propriety of these issues as submitted. The issues clearly inquire of the jury the market values of the lands before and after taking on an average per acre basis. The appellees were not under the burden, as is contended by appellant, of showing some definite decrease in value of the different types of all the land included in the Dishman tract, and of obtaining a favorable finding by the jury in regard to all of these various types of land, and each acre of land. The evidence did show a depreciation in value in various amounts, of different portions of the lands. From this evidence the jury was expected to and did find the key to the amount of depreciation in value of the entire tract, which was the average depreciation per acre. We see no reason why a court might not submit two special issues inquiring as to the market value of the entire tract of land, both before and after taking, and thus immediately arrive at the result sought to be obtained. This was the wording of the suggestions contained in State v. Carpenter, supra. However, since Tennessee Gas Transmission Co. v. Nilson, supra, apparently approves of a submission of the issues on a value per acre basis, we follow such a holding. If it is to be disapproved we think it should be done by the Supreme Court rather than by this court.

 In Point No. 29, the appellant objects to the manner of submission of Special Issue No. 4 on the ground that the issue did not permit or instruct the jury to take into consideration the uses which the owners may make of the surface of the land outside the easement. In Point No. 30 it objects to Special Issue No. 4 on the ground that said issue "requests the jury to find the reasonable market value of the remaining acres of the Dishman lands which assumes the fee interest, whereas the undisputed evidence is that the Dishmans owned only the surface rights of the remaining acres."

These points present no error. When Special Issues Nos. 3 and 4 referred to "the remaining acres of the Dishman 362 and 812.87 acre tracts of land" it was clear to everybody concerned, including the jury, that the court was referring to the surface estate only in the land. It was clearly developed in the evidence that appellees Dishman owned only the surface estate in the lands. In the cross-examination of the witness George A. Dishman, counsel for appellant read him the reservation of minerals in the deed to the Dishmans by which the land was purchased, and Dishman testified that they owned only the surface. When the witness Lyons was testifying and he gave his opinion as an expert as to the value of the lands, the remainder after the taking of the actual strip for the easement, his opinion as to the value was limited to the surface estate of the lands. We also note that the jury answered Special Issue No. 1 that the market value per acre of the surface estate of the 13 acre strip actually taken was $250 before the taking of the easement. The jury likewise answered Special Issue No. 3 that the reasonable market value per acre of the remaining acres of the Dishman tracts before the condemnation of the said 13 acre strip was $250. It is evident that the jury understood Special Issues Nos. 3 and 4 as referring to the surface estate only when the court used the phrase "remainder of the Dishman acres" as did Special Issues Nos. 1 and 2. The evidence as a whole was directed to the uses which the appellees made of the land and the manner in which the value of the land was depreciated by the laying of the pipe line, with special regard to the farming of the land.

By its Point No. 41 appellant complains of a portion of the argument of counsel for appellees. In the course of the argument to the jury by counsel for appellees, he stated to the jury that the charge of the court did not say that appellees had to prove to the jury each and every acre was damaged, individually, as an .acre; that "it says here, 'the tracts of land', and that is the charge." Counsel for appellant objected to the argument as an erroneous statement of the law, in that, he contended, the jury is asked to find a reasonable market value per acre of the remaining acres of the Dishman tracts, and that means the reasonable market value of each acre in the tract. The objection was overruled by the court. The bill of exception to this argument was qualified by the court, such qualification being that the argument complained of was in response to the preceding argument by counsel for appellant to the effect that unless each member of the jury could say every acre within the boundaries of the tracts had been depreciated in market value by the pipe line, that every acre is damaged, then state that the market value is the same.

After the court overruled the objection to the argument, counsel for appellees stated: "That's the way it is. Every time you start hitting where it hurts, they start objecting." Appellant's objection to this remark was sustained by the court and the jury was instructed to disregard such statements of counsel. Counsel for appellees then joined in the request to instruct the jury to disregard his statements and apologized to the court. We find no error presented by these points. As we have indicated above, we do not agree with appellant's contention that appellees here are under the burden of proving some depreciation in value of each acre or of each of the several portions of the Dishman lands. On the authority of Tennessee Gas Transmission Co. v. Nilson, supra, and Tennessee Gas Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837, the party seeking compensation for injuries to land, a portion of which had been condemned, does have the burden to point out what land had been reduced in value and how reduction took place, but the rule does not go so far as to require a showing of damage and reduction in value of each acre in such a tract of land. The later statement of counsel for appellees pointed out above was improper but the court's instruction to the jury cured whatever harm was present in such a remark.

■ Appellant's Point No. 42 complains of other jury argument of counsel for appellees. The occurrence complained of is shown by the bill of exception as follows:

"*Mr. McNicholas.* As a matter of fact, Mr. Weller wouldn't—when I— I am reading the testimony here—when I asked Mr. Doornbos here the question, 'Of course, Mr. Doornbos, I assume with respect to your answer there, you consider the area—Do you consider the area immediately along the North China Road of a greater value than the area which is, shall I say, somewhat remote from the road?' Mr. Weller objected to it, and he couldn't answer the question.

"*Mr. Weller.* Just a moment. If the Court please, I object to counsel stating that he asked certain questions and I made objections, for the reason it is an unfair comment on the ruling by the Court, and is an effort by counsel to tell the jury I kept, or tried to keep certain evidence out. It is improper and prejudicial, and I ask counsel be instructed to refrain from it, and the jury instructed not to consider it in any manner whatsoever.

"*The Court.* Overruled.

"*Mr. Weller.* Note our exception."

Appellant here complains that this was an unfair comment by counsel on the ruling of the court which sustained objection to the question asked the witness. Appellant says it was an effort by counsel to tell the jury that appellant kept out certain evidence, and that appellees had evidence in their possession they were prevented from introducing. Of course if this were true it was error on the part of the court to overrule the objection. Texas Employers' Ins. Ass'n v. Phillips, Tex.Civ.App., 255 S.W.2d 364. However, a different situation entirely obtains here. The source of the controversy is to be found in the examination of the witness William Doornbos. Counsel for appellees asked him the following question: "Of course, Mr. Doornbos, I assume with respect to your answer there, you consider the area—Do you consider the area immediately along the North China Road of a greater value than an area which is, shall I say, somewhat remote from the road?" Counsel for appellant objected to the question on the ground that it was leading and suggestive, which objection the court sustained. Immediately thereafter the witness was asked what value he would place upon the particular tracts along the road and he answered, for a half mile back the land is worth $400 or $500 per acre; then he was asked with respect to the area which is more than a half mile back, much more remote, what did he say to that, and he answered "possibly $175". Then he was asked whether the $250 or $300 figure which he had given was an average or mean of the entire acreage and he answered in the affirmative.

It is evident then that counsel's argument in the instant case, of which the appellant complains, could in no way be considered as telling the jury that the appellant had kept out certain evidence which Mr. Doornbos might have given concerning the greater value of the land near the North China Road. There was a full discussion of such evidence before the jury from the same witness. There could be no intimation that appellees had other evidence but had been prevented by objection of the appellant from introducing it. In these circumstances, appellant could not have been harmed by such a statement of counsel. The points present no error.

■ Appellant's Points Nos. 43 and 44 complain of the action of the trial court in overruling its special exceptions to the answer and cross-action of the appellees. These exceptions were that although the appellees alleged that the remaining acres of the tract were damaged to the extent of $25 per acre by taking a 13 acre strip, the pleading was defective because it did not allege with sufficient certainty what part or parts of the lands were damaged by the pipe line. Under these points the appellant cites Tennessee Gas Transmission Co. v. Zir-

484

jacks, Tex.Civ.App., 244 S.W.2d 837, and says that case is authority for its contention under this point. The holding in the case cited is confined to the sufficiency of the evidence and does not mention, so far as we can see, the pleadings or the necessity for alleging in detail the measure of damages in a condemnation suit. These points show no error and they are overruled.

By Points Nos. 45 and 46, appellant contends that the judgment based on the verdict of the jury awarding the appellees damages of $12.50 per acre for the 1161.57 acres is so grossly excessive as to be clearly wrong.

In the first group of points of the appellant, we have briefly reviewed the evidence in support of the verdict and judgment. We believe it was sufficient to support the findings of the jury and the judgment of the court. Neither the trial court nor the reviewing court can substitute its judgment of values for that of the jury, which has before it competent evidence as to damages and values and reduction in values. See the recent case of Mitchell v. Texas Electric Service Co., Tex.Civ.App., 299 S.W.2d 183 and cases cited therein; Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963; Housing Authority of City of Dallas v. Hubbard, Tex.Civ.App., 274 S.W.2d 165.

The findings by the jury that the remainder of the Dishman tracts suffered a reduction in value of $12.50 per acre is supported by the evidence. The witness Lyons testified that such lands suffered a decrease in value of $30 per acre. Witness Doornbos testified that the land was worth $250 to $300 per acre before taking and that it suffered a decrease in value of 10 to 15 percent. By its verdict the jury found the decrease in value to be considerably less than the witnesses for appellees testified that it was. We overrule these two points.

By its Points Nos. 47, 48, 49, 50, 51 and 54, appellant complains of the testimony of the witness William Doornbos. (In the brief the briefer correctly spells the name Doornbos, but in the statement of facts it is spelled Dornboss. We are giving it the correct spelling throughout this opinion.) It says that he was not shown to be qualified to testify as to the market value of the lands at the time of the taking of the easement, or at any other time; that the court should have stricken the entire testimony of the witness Doornbos for the reason that the basis of his opinion that the whole or the remainder of the said lands were damaged, included that the elements of damage were for speculative purposes, for investment, and to some extent farming, and the possibility of having a leak in the line. It also said that the court erred in allowing the witness Doornbos to testify to personal experiences regarding pipe lines over lands. It says that this testimony was an expression of a private preference of the witness for the purchase or sale of land. We overrule these points without discussion on the authority of State v. Carpenter, supra, for the reasons given above in the discussion of similar complaints by the appellant concerning the admissibility of testimony of the witnesses Floyd Smith and Lawrence Benoit and George A. Dishman.

By its Points Nos. 52 and 53 the appellant complains of the testimony of the witness J. D. Lyons, who testified as an expert on behalf of the appellees. It says that Lyons was not shown to be qualified to testify as to the market value of the property after the construction of the pipe line. These points are stated by the appellant but are not briefed, and they are overruled without extended discussion. We believe the witness showed himself to be qualified by his testimony that he was an expert in land values in Jefferson County, was a licensed real estate broker and land appraiser for 14 years and was familiar with market values of rice lands and other lands in Jefferson County. See Housing Authority of City of Galveston v. Henderson, Tex.Civ. App., 267 S.W.2d 843, and cases cited; City of Teague v. Stiles, Tex.Civ.App., 263 S.W. 2d 623.

We find no error in the record of the trial and the judgment is accordingly affirmed.