**PAN AMERICAN GAS COMPANY, Appellant,**

v.

**Louis G. LOBIT, Appellee.**

**No. 15500.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 26, 1969.

Opinion on Filing of Remittitur
July 11, 1969.

Rehearing Denied Jan. 8, 1970.

Second Rehearing Denied March 5, 1970.

John Shirley, Texas City, for appellant.

Joseph F. Molloy, Dickinson, for appellee.

———◆———

PEDEN, Justice.

This is an eminent domain proceeding brought by the appellant, Pan American Gas Company, to acquire an easement thirty feet wide for construction of a high pressure gas pipeline across three tracts owned by appellee, Louis G. Lobit. The tracts were considered as one although Lot 4A was separated from Lots 5A and 6A by a short distance. The leasehold interest of A. J. Hungerford in part of the same land was also condemned; he did not appeal

from the judgment awarding him no recovery.

Appellant's first five points of error are based on its allegation that there were fatal deficiencies in the landowner's evidence in that H. J. Thomas, the only witness who testified for appellee as to land values, failed to testify as to the value of the easement area as severed land before and after it was taken and failed to testify as to the value of the remainder of the tract, exclusive of the easement area, before and after the easement was taken. Appellant's first point of error is that the trial court erred in overruling its motion to strike Thomas' testimony because of these deficiencies, and its second point is that the trial court should have granted its motion for judgment non obstante veredicto because of the same deficiencies.

We will summarize Thomas' testimony. He has been in the business of buying, selling and appraising real estate continuously since 1956 in nearby Dickinson, Texas. He displayed a map showing that the three tracts in question run in a generally north and south direction and lie north of and adjoining Highway FM 517, which runs between Alvin and Dickinson. Each of the tracts is over two miles in depth and has comparatively narrow frontage on FM 517. Lot 4A contains 118.7 acres; Lobit owns 151.65 acres of Lot 5A, and Lot 6A contains 212.3 acres. The lot located between 4A and 5A is Lot 4. Its south part is a residential subdivision of half-acre lots. That portion of the south part of Lot 5A which is not owned by Lobit is also being subdivided. Thomas is familiar with sales of property in the area and with the subject property.

The highest and best use of the Lots 4A, 5A and 6A is as residential subdivisions. There are some producing oil and gas wells in the north part of the subject lots. Before the date of taking, which was September 17, 1967, there would be no substantial difference between the values of the three lots. Their market value was approximately $1500.00 per acre, or approximately $178,050.00 for the 118.7 acres in Lot 4A and approximately $524,000.00 [1] for the 363.95 acres of Lots 5A and 6A. After the taking, i. e., after a twenty-inch high pressure gas pipeline crossed the tracts diagonally in their southerly portion, the value of the whole tract would be reduced by $100.00 per acre, despite the fact that there were other pipelines on the tracts before the taking by Pan American. The value after this taking would be approximately $166,000.00 [2] for Tract 4A and approximately $488,200.00 [3] for Tracts 5A and 6A.

In making his estimation of values he took into consideration the other two pipelines already in place on the subject property. One of them parallels the new Pan American line and the other comes down to the old line from the wells on the north part of the property. The property fronting on Highway 517 would be damaged by putting in this high pressure gas line proportionally the same as that part of the property fronting on the north bound-

---

1. Shouldn't this figure be $545,925.00?

2. As to 4A: 118.7 (acres) × $1400.00 = $166,180.00.
   118.7 (acres) — .35 (acre easement) = 118.35 (acres).
   118.35 (acres) × $1400.00 = $165,690.00.

3. As to 5A. 6A: 363.95 (acres) × $1400.00 = $509,530.00.
   363.95 (acres) — .98 (acre easement) = 362.97 (acres).
   362.97 (acres) × $1400.00 = $508,158.00.
   It appears that the witness' calculations of the value of Lots 5A and 6A were incorrect by approximately $22,000.00, both as to before and after the taking. We cannot tell from his calculation whether or not his answer was meant to include the easement.

ary line; each acre would be damaged at the rate of approximately $100.00.

The highest and best use of the subject property is still for smal acreage residential property. Construction of the pipeline and taking of the easement reduces the number of lots that can be platted.

Maco Stewart bought the south part of Tract 13, 189 acres, for $1500.00. It adjoined property that he already owned, and 700 feet or so of it adjoined the Gulf Freeway. Thomas did not testify further.

The easement taken was 30 feet wide and 1,934 feet long. As noted, it covered .35 of an acre of Lot 4A and .98 of an acre of Lots 5A and 6A for a total of 1.33 acres. The pipeline was to be 20 inches in diameter and was to be buried to a depth of not less than 36 inches. Lobit could not "build, create, construct or permit to be built, created or constructed, any obstruction, building, lake, engineering works or other structure over or on the right-of-way."

■ Appellant's first point of error is that the trial court erred in denying appellant's motion to strike Thomas' testimony because he failed to testify as to the value of the easement as severed land before and after the taking and failed to testify as to the value of the remainder before and after the taking.

Appellee concedes that Thomas did not testify as to the value of the land subject to the easement after the taking. It is also clear that he did not testify as to the value—considered as severed land—of the 1.33 acre strip before the taking. "The introduction of evidence bearing on this issue should be kept within the framework of the issue submitted." State v. Walker, Tex., 441 S.W.2d 168 (1969). "It is well settled that 'the value of the part taken should be ascertained by considering such portion alone, and not as a part of the larger tract? * * *". State v. Meyer, 403 S.W.2d 366 (Tex.Sup.1966).

As to Lobit's land outside the easement, it consists of 481.32 acres, and it is merely a matter of arithmetic to calculate from Thomas' appraisal that its value before the taking was $721,980.00 and its value after the taking was $673,848.00. Subtracting the lesser figure from the greater, we find that Thomas' testimony would support a judgment that the damage to the remainder was $48,132.00. In Tennessee Gas Transmission Co. v. Nilson, 151 Tex. 446, 251 S.W.2d 503 (1952), the Texas Supreme Court pointed out that the verdict in that case might conceivably have been upheld (as to damage to the remainder) if the testimony had been "considering the value which the whole tract would otherwise have for residential subdivision purposes, and considering also the adverse effect for such purposes of both the old and the new pipe lines, the 'before' value of the entire tract was an amount equivalent to $300.00 per acre and the 'after' value the equivalent of $200.00 per acre." * * * "Doubtless, too, the 'before and after' values found in respect of an entire tract may properly be based on testimony that discloses an actual diminution of value restricted to a few acres within that tract, though the question of counterbalancing the value decrease of the part by a possible value increase of the remainder naturally also enters into the picture. In other words, there is, generally speaking, no reason why a loss of 'X' dollars in respect of a mere part of an entire tract may not be a loss of the same amount in respect of the entire tract and therefore be properly stated in terms of the latter."

We overrule appellant's first point of error. The trial judge was correct in overruling appellant's motion to strike the testimony of H. J. Thomas; it contained valid evidence of the value of Lobit's land outside the easement strip, both before and after the taking.

■ We also overrule appellant's second point. Appellant's motion for judgment non obstante veredicto, based on the alleged deficiencies in appellee's proof of damages

which we have noticed, was properly denied because there was competent evidence before the jury as to all the necessary elements of damages, a value witness for Pan American having testified as to the value of the strip before and after the taking.

■ In acting upon a motion for judgment non obstante veredicto all of the testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962).

Appellant's third, fourth and fifth points of error are based on assertions that the landowner offered no evidence of the value of the property in the easement area after the taking, that he offered none as to the value of the remainder exclusive of the easement area before and after the taking and that he did not carry forward his burden of proof. We overrule these points for the reasons already stated.

■ Appellant's sixth point is that the trial court erred in overruling appellant's motion to strike the testimony of H. J. Thomas because he ascribed a diminution in value of the tracts without testifying as to the nature of the injury, its effect on the land and relationship translated into market value differences. We also overrule this point. Thomas qualified as an experienced real estate broker and appraiser in the area in question. He was familiar with the Lobit tracts and testified that the high pressure gas line made the land less valuable for development as a residential subdivision. See State v. Scarborough, 383 S.W.2d 839 (Texarkana Tex.Civ.App.1964, writ ref., n. r. e.).

Appellant's seventh and eighth points complain of the trial court's overruling of its Motion to Disregard Certain Jury Findings because such findings are not support-

ed by the evidence and because there is no evidence to support them. The findings referred to are the answers to the first four special issues.

Special Issue No. 1

"From a preponderance of the evidence, what do you find was the market value on September 17, 1967, of the Defendant, Louis G. Lobit, including the leasehold interest of A. J. Hungerford, in 1.33 acres of land lying within the 30 foot permanent easement over and across the land in question situated in the Perry & Austin Survey, A–19, Galveston County, Texas, immediately before the taking of said easement by the Plaintiff, Pan American Gas Company?"

"Answer in dollars and cents."

"To which the jury answered: '$1,700.-00'"

Special Issue No. 2.

"From a preponderance of the evidence, what do you find was the market value on September 17, 1967, of the Defendant, Louis G. Lobit, including the leasehold interest of A. J. Hungerford, in 1.33 acres of land lying within the 30 foot permanent easement over and across the land in question situated in the Perry & Austin Survey, A–19, Galveston County, Texas, immediately after the taking of said easement by the Plaintiff, Pan American Gas Company?"

"Answer in dollars and cents."

"To which the jury answered: '$267.-00'"

Special Issue No. 3

"From a preponderance of the evidence, what do you find was the market value on September 17, 1967, of the Defendant, Louis G. Lobit's remaining 481.-31 acres of land, including the leasehold interest of A. J. Hungerford in 269 acres of the same land not included within the 30 foot permanent easement in the land

in question situated in the Perry & Austin Survey, A–19, Galveston County, Texas, immediately before the taking of said permanent easement by Plaintiff, Pan American Gas Company?"

"Answer in dollars and cents."

"To which the jury answered: '$592,-150.00' "

## Special Issue No. 4

"From a preponderance of the evidence, what do you find was the market value on September 17, 1967, of the Defendant, Louis G. Lobit's remaining 481.-31 acres of land, including the leasehold interest of A. J. Hungerford, in 269 acres of the same land not included within the 30 foot permanent easement in the land in question situated in the Perry & Austin Survey, A–19, Galveston County, Texas, immediately after the taking of said permanent easement by Plaintiff, Pan American Gas Company?"

"Answer in dollars and cents."

"To which the jury answered: '$529,-440.00' "

■ As to the first two findings, we conclude that the trial court did not err in overruling the Motion to Disregard but that since the only admissible evidence in the record on which the answers to the first two issues could have been based was that of the Pan American witness, Archie Donahue, the judgment should be reduced to conform to his testimony. He testified that the market value of the 1.33 acres in the easement area was $1,192.00 before the taking and $596.00 after the taking. Appellee has voluntarily remitted $329.00 of this item on the theory that the only evidence of the value of the easement after the taking was that of the condemnor's witness; we believe that remittitur of another $508.00 is necessary to make the judgment conform to the only proper evidence on the value of the easement.

As to the answers to the third and fourth special issues, each is less than the value to which Thomas testified, but by such answers the jury found that the remainder had been damaged by $62,710.-00, and no witness testified that the land exclusive of the strip had been damaged that much. Appellee has voluntarily remitted $14,579.00 of this amount (the excess above $48,131.00)', and we conclude that the trial court did not err in awarding the landowner that amount as damages to the remainder. Appellee's total remittitur in the trial court was $329.00 plus $14,579.-00, a total of $14,908.00.

■ Being of the opinion that the verdict, as reduced by remittitur in the trial court, and the judgment of the trial court are excessive in the amount of $508.00 and that this cause should be reversed for that reason only, we are required to permit the appellee to file a remittitur of such excess. Rule 440, Texas Rules of Civil Procedure; Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151 (1950); Central Power & Light Co. v. Graddy, 318 S.W.2d 943 (Houston Tex.Civ.App.1958, no writ).

Appellant's ninth point states that the trial court erred in permitting appellee to examine appellant's witness concerning acquisition of easements not related to this proceeding. It asserts that the trial court should have been granted its motion in limine thus forestalling the asking of questions by appellee's attorney of Pan American's witness, C. W. Cline, about the size of the easement which Pan American obtained over tracts adjoining the subject property. Appellant's objections to the questions were sustained. No effort was made to show the prices offered or paid for any easements obtained through condemnation or the threat of it.

■ If a motion in limine is overruled, a judgment will not be reversed unless "the questions or evidence were *in fact* asked or offered. If they were *in fact* asked or offered, an objection made at that

time is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial that the mere asking or tendering should require a reversal. In neither case—(1) questions not asked or evidence not offered, or (2) questions asked or evidence offered—should the error of the trial court in overruling the motion in limine be regarded as harmful or reversible error." Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.Sup.1963). The questions asked by Lobit's counsel in the instant case were not so prejudicial that the mere asking of them requires a reversal.

 We also overrule appellant's tenth point, which complains of the trial court's having overruled its motion in limine thus permitting appellee's counsel to question C. W. Cline concerning explosions or ruptures of other gas lines. Cline was Pan American's engineering supervisor on the gas line in question. We have examined the record of the questions he was asked and the answers he gave; we find nothing prejudicial in them.

Our rulings on appellant's seventh and eighth points are also dispositive of its eleventh point, which stated that the filing of a remittitur was not sufficient to sustain the judgment.

The judgment of the trial court is reversed and the cause remanded unless within twenty (20) days appellee files with the Clerk of this Court a written remittitur in the sum of $508.00, in which event the judgment as remitted will be affirmed.

Reversed and remanded conditionally.

### On Filing of Remittitur

PEDEN, Justice.

In a written opinion filed on June 26, 1969, we stated that the judgment of the trial court in this cause would be reversed and remanded unless the appellee filed a written remittitur in the amount of $508.00 within twenty days.

The appellee has timely filed the remittitur of $508.00.

Accordingly, as of this date, the judgment of the trial court in favor of the appellee is reformed by deducting $508.00 from it and, as so reformed, is affirmed.

### On Motion for Rehearing

PEDEN, Justice.

We withdraw from our opinion in this cause our statement that Lobit could not "build, create, construct or permit to be built, created or constructed, any obstruction, building, lake engineering works or other structure over or on the right-of-way."

Appellee admits that as to the value of the 1.33 acres in the easement area his voluntary remittitur should have amounted to $329. but that by error he remitted only $229. He has now voluntarily remitted in writing the additional sum of $100.; the judgment of the trial court is ordered to be reduced by $100. and, as thus reformed, is affirmed.

Appellant's motion for rehearing is overruled.